# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 15 |
| Lighthouse Immersive Inc., *et al.* | Case No. 23-11021 (LSS) |
| Debtors in a Foreign Proceeding.[1] | Joint Administration Requested |

**DECLARATION OF COREY ROSS IN SUPPORT OF (I) CHAPTER 15 PETITIONS FOR RECOGNITION OF FOREIGN PROCEEDING, (II) MOTION OF THE FOREIGN REPRESENTATIVE FOR ENTRY OF PROVISIONAL AND FINAL RELIEF IN AID OF FOREIGN PROCEEDING, AND (III) CERTAIN RELATED RELIEF**

I, Corey Ross, declare as follows:

1. I am a Director and the President of Lighthouse Immersive Inc. ("Lighthouse CA") and Lighthouse Immersive USA Inc. (formerly Light House Immersive USA, Corp.) ("Lighthouse USA"), with Lighthouse CA, the "Debtors"). Lighthouse CA was appointed by the Superior Court of Justice (Commercial List) in Ontario, Canada (the "Canadian Court") in the proceeding captioned under Court File No.: CV-23-00703509-00CL (the "Canadian Proceeding") by the Initial Order entered on July 27, 2023 under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") as the foreign representative of the Debtors and is authorized to commence these chapter 15 cases in respect of the Debtors.

2. The three founders of the Debtors are myself, Svetlana Dvoretsky ("Svetlana"), and Slava Zheleznyakov ("Slava"). Together, we are the shareholders to the

---

[1] The Debtors and the last four digits of its U.S. Federal Employer Identification Numbers or other unique identifier are as follows: Lighthouse Immersive Inc. (9411) (Ontario Corporation No.) and Lighthouse Immersive USA Inc. (2401) (FEIN). The Debtors' mailing address is 640 Briar Hill Avenue, Toronto, Ontario, Canada, M5N 1N2.

Debtors, through our respective holding companies (collectively the "Owners"), having the following holdings:

    a. my holding company, Corey Ross Productions Inc. ("Ross Productions"), owns 50% of the common shares of each of the Debtors;

    b. Svetlana's holding company, Dvoretsky Holdings Inc. ("Dvoretsky Holdings"), owns 25% of the common shares of each of the Debtors; and

    c. Slava's holding company, Slava Z HoldCo Inc. ("SZ HoldCo"), owns 25% of the common shares of each of the Debtors.

3. If called to testify as a witness, I could and would competently testify to each of the facts set forth herein based upon my personal knowledge, review of documents, or opinion. I am authorized to submit this declaration on behalf of the Debtors.

4. Pursuant to the Initial Order, "Lighthouse Immersive Inc. . . . is authorized and empowered to act as a foreign representative (the "Foreign Representative") in respect of [the Canadian] proceedings for the purpose of having [the Canadian] proceedings recognized in a foreign jurisdiction." Initial Order ¶ 44. The Initial Order further provides that "the Foreign Representative . . . . is hereby authorized to apply for foreign recognition of these proceedings, as necessary or advisable, in any jurisdiction outside of Canada, including without limitation, the United States pursuant to Chapter 15 of Title 11 of the United States Code 11 U.S.C., § 101 – 1532." Initial Order ¶ 45.

5. Contemporaneously with the filing of this declaration, I have caused to be filed, on behalf of the Foreign Representative as authorized foreign representative of the Debtors, petitions for recognition of the Canadian Proceeding in the United States under chapter 15 of title 11 of the United States Code.

6. I have read the papers filed contemporaneously with this declaration, including the *Motion of the Foreign Representative for Entry of Provisional and Final Orders Granting Recognition of Foreign Proceeding and Certain Related Relief under Sections 105(a), 362, 365, 1517, 1519, 1520, and 1521 of the Bankruptcy Code* (the "Recognition Motion"), and believe the statements in those papers to be true and correct to the best of my knowledge based on my investigation.

7. As foreign representative for the Debtors, the Foreign Representative seeks recognition of the Canadian Proceeding as the foreign main proceeding of each of the Debtors, or, in the alternative, as a foreign nonmain proceeding. The Foreign Representative also seeks certain related relief necessary to preserve value and administer these chapter 15 cases.

## OVERVIEW OF THE LIGHTHOUSE CORPORATE GROUP

**A.    Lighthouse Corporate Group Operations**

8. The Debtors are in the business of producing immersive show exhibits in Canada, the United States, and various cities around the world, through their multiple affiliated entities and subsidiaries.

9. Lighthouse CA was formed by myself, Svetlana, and Slava with the intention of combining our respective talents and passion for the arts to introduce a new form of art into North America – immersive exhibits. Immersive exhibits use projection technology to create an environment where the public can experience art. In this way, immersive exhibits create an experience for ticket-goers where they walk through a venue (or during the Covid-19 pandemic drive through) and view enormous digital projections that highlight brushstrokes,

colour, and detail in order to bring the art "to life". These exhibits are paired with music to complete the immersive experience.

10. In February 2020, Lighthouse CA announced its first show, Immersive Van Gogh, in Toronto. Immersive Van Gogh, projects Van Gogh's artwork in 360 degrees on 500,000 cubic feet of surface, capturing the floors, walls, columns and other architecture of our gallery to create an animated world of art that the audience is enveloped in. Immersive Van Gogh is custom designed to the historic space that previously housed the Toronto Star's printing presses at 1 Yonge Street. Immersive Van Gogh was scheduled to open in Toronto in May 2020. However, in March 2020, the Covid-19 pandemic resulted in government-mandated shutdowns and restrictions that prevented walk in exhibits. Lighthouse CA swiftly pivoted its business model to present a drive-in show of Immersive Van Gogh. This model was applied until Covid-19 restrictions eased and walk in exhibits were allowed.

11. The drive-in immersive art show was an instant success and received accolades from the press and community. As the only show "in town" able to continue during the lock down Covid-19 restrictions, Lighthouse CA sold out shows seven days a week and months in advance for almost an entire year.

12. Based on the success Lighthouse CA was having, Lighthouse decided to expand the immersive exhibits into the US market, through Lighthouse USA. Lighthouse USA planned to present Immersive Van Gogh first, and follow with other immersive content that was produced.

13. The Debtors expanded their business at a rapid rate, entering into long-term leases of varying lengths mostly through wholly-owned subsidiaries of Lighthouse USA

across over ten states in the United States. During the Covid-19 pandemic, most of the lease agreements and site visits were conducted over Zoom videoconference due to travel restrictions.

14. Immersive Van Gogh received an initially similar overwhelming positive response in the United States. For the calendar year 2021, the Debtors operated at a significant profit. During a short time-frame, the Debtors grew from one entity in one location producing a single show to over 30 entities, attempting to produce various shows in about 20 venues around the world.

15. It is customary in the entertainment production industry to create a new entity for every new contract, new production or new show location. As part of the Debtors' rapid growth into different markets, the corporate structure became complex, comprising of over 30 entities. At present, Lighthouse CA effectively operates as the Lighthouse group's head office and Lighthouse USA has 10 wholly-owned subsidiaries that currently operate or previously operated an immersive show in a United States location.

16. Part of the Debtors' expansion included producing Immersive Van Gogh in the United States as well as presenting new immersive shows, including Immersive Frida Kahlo, Immersive Klimt, Immersive Monet, Immersive King Tut, Immersive Vatican, Immersive Mozart, and seasonally, Immersive Nutcracker.

17. As the government restrictions in place during the Covid-19 pandemic lifted, theatres, galleries, and museums resumed operations, though still popular, the Debtors' immersive shows no longer had the same overwhelming success they once did as the form of art lost its novelty and patrons had other options. This caused strain to the financial situation of the Debtors and the Lighthouse group. In addition, multiple competitors entered the market with competitive prices, which further negatively impacted the Debtors' ticket sales.

18. Unfortunately the additional shows were significantly less successful than anticipated for the reasons above. Sales of new shows dropped to 10% of Van Gogh sales, leading the Debtors to introduce more shows at a rapid pace in 2022 resulting in escalating development costs and marketing costs.

19. Although the Debtors' business grew rapidly, they were unable to keep up with the growth from a back-office standpoint. In particular, they were met with internal business challenges of not having a solid, long-term Chief Financial Officer or a substantial financial department to keep up with the rapid expansion of the business.

20. In an attempt to conserve cash for their business, the Owners stopped receiving management fees and did not take salaries, notwithstanding being heavily involved with the management of the business on a full-time basis.

21. In October 2022, one of the Debtors' affiliates secured an exclusive partnership with a large multinational entertainment company ("Entertainment Co.") to create and produce a brand specific Immersive Animation show. The Immersive Animation show has proven successful, is operating currently in Lighthouse's venue in Toronto, among other venues in the US, and has allowed the Lighthouse group to recently enter international markets.

22. However, the Debtors and their affiliates are not making sufficient revenue to fulfill their commitments with respect to their long-term lease agreements, license agreements, and vendor agreements with various entities, and are in default of certain obligations. The Debtors, through their affiliates and subsidiaries, currently produce shows in the following cities: Boston, Chicago, Cleveland, Columbus, Denver, Detroit, Las Vegas, London (Ontario), Minneapolis, Nashville, San Antonio, Tokyo, and Toronto. The shows are winding

down, and by the end of September 2023, only approximately four to five locations will be operating shows.

**B.     The Debtors' Background and Corporate Structure**

23.     Lighthouse CA was incorporated under the *Business Corporations Act* (Ontario) on October 1, 2019.

24.     Lighthouse USA was incorporated under the laws of the State of Delaware on October 21, 2020.

25.     Lighthouse USA wholly owns the following ten limited liability companies (the "Subsidiaries") in the United States:

   a. Lighthouse Immersive Las Vegas, LLC;

   b. Lighthouse Immersive Denver, LLC;

   c. Lighthouse Immersive Detroit, LLC;

   d. Lighthouse Immersive Cleveland, LLC;

   e. Lighthouse Immersive Columbus, LLC;

   f. Lighthouse Immersive Nashville, LLC;

   g. Lighthouse Immersive Kansas City, LLC;

   h. Lighthouse Immersive San Antonio, LLC;

   i. Lighthouse Immersive Madison, LLC; and

   j. Lighthouse Immersive Orlando, LLC.

26.     Both the Orlando LLC and Madison LLC are inactive companies. The Kansas City LLC recently closed down its show and is exiting the leased premises.

27. The Subsidiaries are the named tenants on the majority of lease agreements and produce the active shows in their respective locations under the direction of the Debtors or another member of the Lighthouse group depending on the show.

28. Lighthouse USA is the guarantor on the leases in Denver, Cleveland, Columbus, and Minneapolis.

29. In addition to the Subsidiaries, the Debtors have 15 affiliated companies, all of which are owned by the Owners, but none are applicants in the Canadian Proceedings at this time.

30. Lighthouse USA is also the majority owner of five additional limited liability companies and two limited partnerships that have or had operations in New York, Boston, and Chicago.

C. **The Debtors' Need for Protection Pursuant to the CCAA and Chapter 15 of the Bankruptcy Code**

31. Despite their best efforts, the Debtors have been unable to successfully restructure and right size their business without a formal process.

32. The Debtors are insolvent and in breach of many of their obligations to creditors. Most imminently, as further described below, Lighthouse USA is facing a confession of judgment in the amount of US $16.6 million pursuant to the LHIM Settlement (as defined below), which set to be heard in the Superior Court of Delaware on July 28, 2023 at 10:00 a.m. (ET).

33. In or around the beginning of 2021, Lighthouse USA entered into a joint venture with Impact Museums, Inc. a/k/a Impact Museums, LLC ("Impact") for the purpose of expanding the Debtors' business into certain U.S. markets. Specifically, per the parties'

agreement, Impact was responsible for delivering and managing seven venues and Lighthouse USA was responsible for programming and marketing.

34. To facilitate the joint venture, Lighthouse and Impact became owners of LHIM Productions, LLC ("LHIM"), owning 49% and 47%, respectively. The advertising agency, Twenty6Two International Inc. and its principal, which provides advertising for the Lighthouse group became the remaining 4% owner of LHIM Productions, LLC.

35. Various issues arose during the partnership and in or around the fall of 2022, the parties attended arbitration to settle the dispute. This resulted in a settlement agreement ("LHIM Settlement Agreement") being entered into among Impact, LHIM, Lighthouse USA, the Owners personally, and additional non-related entities effective on October 21, 2022.

36. As a result of a missed payment under the LHIM Settlement Agreement, Impact took the following two steps against Lighthouse USA. Impact/LHIM locked the Debtors out of their Los Angeles, Dallas, and Atlanta venue locations, forcing the Debtors to cancel the Immersive Animation show. This caused the Lighthouse group to have to refund approximately $1.5 million in tickets sales and cancel all ongoing ticket sales. The Debtors are of the view that the terms of the Settlement Agreement did not allow Impact/LHIM to take this step and that it was improper and actionable. The lockout has led to significant issues with their relationship with Entertainment Co., which the Lighthouse group is trying to repair and has significantly negatively impacted the Lighthouse group's cash flow.

37. In addition, Impact sought a confession of judgment in the amount of US $16.6 million in the Superior Court of Delaware under the LHIM Settlement. The Debtors have engaged U.S. counsel and intend to dispute the amount sought and the circumstances leading to

the confession to judgment. The confession of judgment is set to be entered in the Superior Court of Delaware at a hearing scheduled for this Friday, July 28, 2023 at 10:00 a.m. (ET). The Debtors require urgent protection under the CCAA to keep the *status quo* and prevent the entry of LHIM's confession of judgment.

38. The Debtors are in urgent need of protection under the CCAA so they can stabilize their business, sell excess merchandise and equipment, and work towards right-sizing their business. The Debtors have commenced the CCAA proceedings with the ultimate goal of protecting the interests of creditors and other stakeholders, with a view to having the business emerge from CCAA protection in a stronger form that preserves its enterprise value and employment for as many of its employees as is reasonably possible.

## RECOGNITION AND OTHER RELIEF REQUESTED

A. **Recognition of the CCAA Proceedings as a Foreign Main Proceeding**

39. I am informed that in order to be recognized as a "foreign main proceeding," a proceeding must be pending in the country where the debtor has its "center of main interests," which I understand to be the functional equivalent of a headquarters, principal place of business or "nerve center." I believe that the CCAA Proceedings meet this requirement.

40. Toronto serves as the centre for the Debtors' business enterprise. The Debtors, their affiliates and subsidiaries are all managed from Toronto on a consolidated basis.

41. Lighthouse CA's principal place of business is located in Toronto. Lighthouse USA's principal place of business is also located in Toronto, pursuant to its Annual Franchise Tax Report in Delaware.

42. The Debtors' Executive Management Team of President (myself) and Vice President (Svetlana) reside in Toronto. The Executive Management Team is responsible

for making corporate decisions about all aspects of the business, including marketing, new business initiatives, and financial decisions.

43. The Debtors' banking and cash management systems are also exclusively tied to Canada. The Debtors' bank with the Royal Bank of Canada and a small portion with the Bank of Montreal. The Debtors' U.S. affiliates and subsidiaries bank almost exclusively with an affiliate of the Royal Bank of Canada, being City National Bank. The financial decisions of the Debtors, their affiliates and subsidiaries are made by the Executive Management Team, in Canada.

44. In addition, the most vital people assisting with the business are located in Canada, including the Debtors' Financial Controller, Financial Consultant, Box Office Director, Head of Productions, Head of New Venue Development and Senior Production Manager, Marketing Director, Director of Sponsorship and Grants, Director of Retail, General Manager, and Associate Producers. Some of these vital people are contracted or employed through Lighthouse CA, while others are employed through Starvox Exhibits Inc., my other production entity incorporated in Canada.

45. The advertising agency that the Debtors' use, Twenty6Two International Inc., is also located in Canada.

46. In addition to the lead persons mentioned above, the majority of their respective teams are located in Canada. For example, the majority of Lighthouse CA's production and installation teams under the direction of myself and one of Lighthouse CA's employees who resides in Canada. When there is a new show, the production team builds most of the sets in Canada, including printing vinyls, and then travels to the city in the United States to

create the sets and create the production. The Canadian team typically enlists local employees or contractors to assist with the production.

47. The Debtors' merchandise team, responsible for purchasing merchandise, products, and managing the stores are also based in Canada.

48. Employee decisions for the Debtors, including their affiliates and subsidiaries, are made in Toronto by the Executive Management Team and through the General Manager, Jessica Johnston. Training and support for employees of any of the Debtors' entities is facilitated in Toronto under the direction of Eugenia Protsko.

**B.      Need for Provisional Relief**

49. In addition to seeking recognition on a final basis, the Foreign Representative also requests certain provisional relief. Pending recognition of the CCAA Proceedings, the Foreign Representative seeks provisional relief to enjoin collection efforts against the Debtors and their assets, as well as to protect potentially valuable contractual relationships. This relief is necessary to avoid immediate and irreparable harm to the Debtors and their assets if U.S. creditors and contract parties begin a "race to the courthouse" or resort to other self-help remedies resulting in a piece-meal and preferential liquidation and distribution of assets, rather than an orderly liquidation and distribution of value according to legal priorities.

50. This provisional relief is consistent with the Initial Order, which, among other things, stays all creditor collection actions against the Debtors, their assets and their directors and officers (paragraphs 12 and 16) and prohibits contract counterparties from terminating contracts with the Debtors (paragraph 13 and 14).

51. For the foregoing reasons, I believe that the provisional relief requested is necessary and appropriate and is in the best interests of the Debtors, their creditors, and other parties in interest.

**C.    Noticing Procedures**

52.    The Foreign Representative has also filed a motion requesting that the Court schedule a final recognition hearing and approve related noticing procedures (the "Notice Procedures Motion").  I can attest that the Debtors have over 100 creditors, potential creditors, and other parties in interest, all of whom need to be provided with, among other things, notice of the provisional order, the proposed final order, the recognition objection deadline, and the recognition hearing.  The Foreign Representative has prepared a form of notice advising of these and related matters (the "Recognition Hearing Notice"), a copy of which is annexed to the Notice Procedures Motion.

53.    Under the facts and circumstances of the Debtors' Chapter 15 Cases, I submit that service of the Recognition Hearing Notice in the manner proposed in the Notice Procedures Motion will provide those parties identified as the Notice Parties in the Notice Procedures Motion with due and sufficient notice of the relief requested in the Recognition and Relief Motion and associated objection deadline and hearing dates.

54.    Therefore, I believe that the relief requested in the Notice Procedures Motion is necessary and appropriate and is in the best interests of the Debtors, their creditors, and other parties in interest.

**D.    Joint Administration**

55.    The Foreign Representative has also filed, contemporaneously herewith, (i) a motion seeking entry of an order directing joint administration of these Chapter 15 Cases for procedural purposes only ("Joint Administration Motion").

56.    I believe that joint administration of these Chapter 15 Cases is warranted because the Debtors' financial affairs and business operations are closely related, and because it will ease the administrative burden of these cases on the Court and interested parties.  I can

confirm that the Foreign Representative anticipates that the various notices, motions, hearings, orders, and other pleadings in these cases will affect all of the Debtors.

57. Therefore, I believe that the relief requested in the Joint Administration Motion is necessary and appropriate and is in the best interests of the Court, the Debtors, their creditors, and other parties in interest.

58. For additional background, I have attached to this declaration a true and correct copy of the full Application Record filed with the Canadian Court to commence the Canadian Proceeding.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: July 27, 2023                                 */s/ Corey Ross*
      Toronto, Ontario                       Corey Ross
                                                            President
                                                            Lighthouse Immersive Inc. as Foreign
                                                            Representative for Lighthouse Immersive
                                                            Inc. and Lighthouse Immersive USA Inc.