**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 15 |
| Lighthouse Immersive Inc., *et al.* | Case No. 23-11021 (LSS) |
| Debtors in a Foreign Proceeding.[1] | Joint Administration Requested |

**MOTION OF THE FOREIGN REPRESENTATIVE FOR ENTRY OF PROVISIONAL
AND FINAL ORDERS GRANTING RECOGNITION OF FOREIGN PROCEEDING
AND CERTAIN RELATED RELIEF UNDER SECTIONS 105(a), 362, 365, 1517, 1519,
1520 AND 1521 OF THE BANKRUPTCY CODE**

Lighthouse Immersive Inc., solely in its capacity as authorized foreign representative of and Lighthouse Immersive Inc. ("Lighthouse CA") and Lighthouse Immersive USA Inc. ("Lighthouse USA"), and, with Lighthouse CA, the "Debtors"), and not in its personal or corporate capacity, hereby moves (the "Motion") as follows.

**RELIEF REQUESTED**

1.    Pursuant to sections 105(a), 362, 365, 1517, 1519, 1520 and 1521 of title 11 of the United States Code (the "Bankruptcy Code"), the Foreign Representative respectfully requests entry of:

(i)    a provisional order substantially in the form attached as **Exhibit A** (the "Provisional Order") enforcing in the United States, on a provisional basis, the Initial Order with respect to the Debtors and their assets issued and entered on July 27, 2023, by the Superior Court of Justice (Commercial List) in Ontario, Canada (the "Canadian Court"), Court File No.: CV-23-00703509-00CL (the "Canadian Proceeding"), and, under sections 105(a), 1519(a) and 1521(a)(7) of

---

[1]    The Debtors and the last four digits of its U.S. Federal Employer Identification Numbers or other unique identifier are as follows: Lighthouse Immersive Inc. (9411) (Ontario Corporation No.) and Lighthouse Immersive USA Inc. (2401) (FEIN).  The Debtors' mailing address is 640 Briar Hill Avenue, Toronto, Ontario, Canada, M5N 1N2.

the Bankruptcy Code, applying sections 362 and 365(e) of the Bankruptcy Code in these chapter 15 cases on a provisional basis and authorizing the Foreign Representative to operate the Debtors' businesses and administer the Debtors' assets on a provisional basis, and granting related relief; and

(ii)    after notice and a hearing, a final order substantially in the form attached as **Exhibit B** (the "Final Order") (a) granting the chapter 15 petitions in these cases and recognizing the Canadian Proceeding as a foreign main proceeding, or in the alternative a foreign nonmain proceeding, under section 1517 of the Bankruptcy Code, (b) giving full force and effect in the United States to the Initial Order, including any and all extensions or amendments thereof authorized by the Canadian Court and extending the protections of the Initial Order to the Debtors on a final basis, (c) applying section 365 of the Bankruptcy Code in these chapter 15 cases on a final basis under section 1521 of the Bankruptcy Code, and (d) granting related relief.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  Recognition of a foreign proceeding and other matters under chapter 15 of the Bankruptcy Code are core matters under 28 U.S.C. § 157(b)(2)(P).

3.      The Foreign Representative, solely in its capacity as authorized foreign representative, and not in its personal or corporate capacity, consents to the entry of final orders

or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4.      Venue in this district is proper under 28 U.S.C. §§ 1410(1) and (3).

5.      The statutory predicates for the relief requested herein are sections 105(a), 362, 365, 1517, 1519, 1520 and 1521 of the Bankruptcy Code.

## BACKGROUND

6.      On or about July 27, 2023, the Debtors commenced proceedings (the "Canadian Proceedings") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA").  On the same date, the Canadian Court entered the Initial Order, which, among other things, appointed the Foreign Representative as of the Debtors.

7.      On the date hereof, the Foreign Representative filed petitions under chapter 15 of the Bankruptcy Code for recognition of the Canadian Proceeding, thereby commencing the Debtors' chapter 15 cases.

8.      Additional information concerning the Debtors and the Canadian Proceeding is found in the contemporaneously filed *Declaration of Corey Ross in Support of (I) Chapter 15 Petitions for Recognition of Foreign Proceeding, (II) Motion of the Foreign Representative for Entry of Provisional and Final Relief in Aid of Foreign Proceeding, and (III) Certain Related Relief* (the "Ross Declaration").  The Ross Declaration is incorporated herein by reference.

## BASIS FOR RELIEF

9.      Similar to the protection provided to debtors under the Bankruptcy Code, upon entry of the Initial Order, the Debtors' creditors are stayed from taking litigation actions against the Debtors and their assets, wherever located, and contract counterparties are stayed

from terminating, modifying or refusing to perform under contracts with the Debtors. Additionally, the Initial Order, among other relief, vests the Foreign Representative with broad power and control over the Debtors' assets and businesses, including by granting the Foreign Representative express authority to operate the Debtors' businesses and administer the Debtors' assets. Notwithstanding the worldwide application of the stay imposed by the Initial Order, the prohibitions related to the Debtors' contracts, and the grant of authority to operate the Debtors' businesses and administer their assets, there is a risk that the Debtors' creditors may attempt to take enforcement actions against the Debtors' assets located in the United States, terminate or interfere with U.S. contracts with the Debtors, or refuse to recognize and/or interfere with the Foreign Representative's authority to operate the Debtors' businesses and administer their assets.

10.     To protect against these risks, the Foreign Representative commenced these chapter 15 cases and, by this Motion, is seeking the entry of the Final Order (i) granting recognition of the Canadian Proceeding, (ii) giving full force and effect in the United States to the Initial Order, and (iii) applying section 365 of the Bankruptcy Code to these chapter 15 cases. Entry of the Final Order granting such relief would, among other things, extend the protections of the automatic stay to the Debtors' assets located in the United States, prevent contract counterparties from modifying, terminating, refusing to perform under, or interfering with the Debtors' U.S. contracts, and vest the Foreign Representative with authority to operate the Debtors' businesses and administer their assets located in the United States.

11.     In addition, the Foreign Representative is seeking entry of the Provisional Order applying sections 362 and 365(e) on a provisional basis to ensure that, pending entry of the Final Order, creditors do not attempt to bring any enforcement action against the Debtors or their assets, or attempt to terminate, modify, or refuse to perform under their contracts with the

4

Debtors.  The Provisional Order would also recognize and enforce the Foreign Representative's authority to operate the Debtors' businesses and administer their assets in the United States, consistent with the authority granted in the Initial Order.  This provisional relief is necessary and appropriate to maintain the status quo and preserve the Debtors' assets in the period before the Court holds a hearing on recognition and entry of the Final Order.

12.    Provisional and final relief are appropriate.  To be recognized under chapter 15, a proceeding must be a "foreign proceeding," the chapter 15 petition(s) must be filed by an authorized "foreign representative" and the chapter 15 petition(s) must meet the requirements of the Bankruptcy Code.  As discussed in more detail below, the Canadian Proceeding qualifies as a foreign proceeding, the Foreign Representative is an authorized foreign representative within the meaning of the Bankruptcy Code, and the Petitions meet the requirements of chapter 15 of the Bankruptcy Code.  Furthermore, the Canadian Proceeding is a foreign main proceeding because the Debtors' center of main interest is in Canada as discussed further below.  To the extent not recognized as a foreign main proceeding, the Canadian Proceeding is a foreign nonmain proceeding because each Debtor has an establishment within the meaning of section 1502 of the Bankruptcy Code in Canada as detailed below.

13.    For provisional relief, the familiar standards applicable to an injunction apply: (i) whether there is a substantial likelihood of success on the merits; (ii) whether irreparable harm will be suffered if the requested injunction is denied; (iii) whether granting preliminary relief will result in greater harm to nonmoving parties; and (iv) whether the public interest favors such relief.  As discussed below, the Foreign Representative has a substantial likelihood of success, and the balance of harms and public interest strongly favor granting provisional relief.

**I.      The Canadian Proceeding should be recognized as a foreign main proceeding.**

14.      By this Motion, the Foreign Representative seeks, under sections 1517 and 1520 of the Bankruptcy Code, recognition of the Canadian Proceeding as a foreign main proceeding, recognition and enforcement of the Initial Order in the United States, and related relief.  The Canadian Proceeding is entitled to recognition as a "foreign main proceeding" under chapter 15 of the Bankruptcy Code because, among other things:

a.      the Canadian Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code;

b.      the Foreign Representative is a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code;

c.      the Petitions were filed in accordance with sections 1504 and 1509 of the Bankruptcy Code and meet the requirements of sections 1504 and 1515 of the Bankruptcy Code; and

d.      the Canadian Proceeding is a "foreign main proceeding" because the Debtors have their center of main interest in Canada.

**A.      The Canadian Proceeding is a foreign proceeding.**

15.      To be recognized under chapter 15 of the Bankruptcy Code, a proceeding must qualify as a "foreign proceeding."  *See* 11 U.S.C. § 1517(a).  Section 101(23) of the Bankruptcy Code defines "foreign proceeding" as:

a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).  The Canadian Proceeding fits this definition.  Proceedings under the CCAA are (1) voluntary insolvency proceedings, (2) in Canada, (3) that occur under the

supervision of a Canadian court, (4) in which a debtor reorganizes or liquidates its business and distributes value to creditors pursuant to a plan.

16.     In many ways, the CCAA is similar to a case under chapter 11.  Absent exceptional circumstances, and subject to oversight by a court-appointed monitor and the consent of the Canadian court, the debtor's management and board of directors remain in place and the board maintains its power under Canadian law to approve significant actions, including disposing of important assets, entering into financing arrangements and/or changing corporate structures. Upon the commencement of a CCAA proceeding, the Canadian court appoints a qualified monitor, who functions as an independent observer of the proceedings and the debtor's business and (i) monitors the company's ongoing operations, (ii) reports to the court on any major events affecting the company, (iii) notifies the company's creditors and, if applicable, shareholders of any meetings and tabulates votes at these meetings, if held, (iv) assists with preparing, filing, and holding meetings for voting on the plan of arrangement, (v) approves the disclaimer of contracts and leases, (vi) may prepare reports in conjunction with any interlocutory motions by the company or other stakeholders, and (vii) prepares a report on the plan of arrangement, which is usually included in the mailing of the plan, if one is filed.  Consent of the monitor is generally not required for the debtor to manage its business, including the sale of assets in the ordinary course, but the monitor may request that the court enjoin any actions that may prove harmful to the debtor and/or its creditors.  Though the monitor need not formally approve significant transactions such as asset sales outside of the ordinary course, court approval is generally required for such transactions and the court gives weight to the monitor's recommendations concerning such transactions.

17.     Upon the commencement of a CCAA proceeding, all actions against the debtor and its assets are stayed, wherever located.  The stay is granted for a maximum period of 10 days, but is typically extended where the debtor can show it continues to act with good faith and due diligence.  There is no limit on the number or duration of these extensions of the stay.  In CCAA proceedings, subject to limited exceptions, clauses triggering termination rights upon the debtor's commencement of an insolvency proceeding are not enforceable, so contract counterparties may not terminate contracts solely by virtue of the commencement of the proceedings.

18.     During a CCAA proceeding, a debtor is also able to obtain postpetition financing (*i.e.*, DIP financing), subject to a hearing and court approval, after showing that the proposed financing is in the best interests of its estate.  Such borrowings would typically have priority status in the CCAA proceeding, and, if unsecured financing is unavailable, the debtor is permitted to borrow on a secured basis.  The Canadian court may also approve priority charges against the company's assets, which take priority over existing secured creditors, where notice of the charge approval hearing is given to the potentially affected creditors and the court is of the opinion that such charges are necessary in the circumstances.

19.     In a CCAA proceeding, on or after the day on which the CCAA proceedings commence, the debtor may disclaim or resiliate (*i.e.*, cancel) any agreement (including leases) to which it is a party by giving a notice of at least 30 days (the "Disclaimer Notice Period").  In the case of lease agreements, the CCAA generally requires that the debtor pay post-filing rent due during the Disclaimer Notice Period and until the lease agreement is terminated.  In addition, the monitor must approve the proposed disclaimer or resiliation.  An agreement as to which a disclaimer notice has been sent is automatically disclaimed or

resiliated—which has the legal effect of terminating the lease agreement—at the expiration of the Disclaimer Notice Period unless within 15 days after the day on which the notice was given, the counterparty to the agreement files a challenge, which entitles the counterparty to a hearing before the Canadian Court.  Furthermore, a counterparty to the agreement who suffers a loss in relation to the termination resulting from disclaimer or resiliation is considered to have an unsecured claim, the size of which will depend on the damage to the counterparty, which will be paid in accordance with the plan of arrangement sanctioned by the Canadian Court.

20.     For a plan of arrangement to be binding on each class of creditors, a majority of the proven creditors in that class, by number, together with two-thirds (2/3) of the proven creditors in that class, by dollar value, must approve the plan presented.  If a class of creditors approves the plan, it is binding on all creditors within the class, subject to the Canadian court's approval of the plan.  If all of the classes of creditors approve the plan, the Canadian court must then approve the plan as a final step.  Upon Canadian court approval, the company continues forward as outlined under the plan until it has satisfied the requirements under the plan. If a class of creditors or the Court does not approve the plan, the company does not automatically go into bankruptcy, but the stay of proceedings is lifted.

21.     Throughout a CCAA proceeding, the court retains broad discretion to issue orders that it considers appropriate under the circumstances.  Furthermore, any "interested person" seeking to object to such proposed orders or the plan of arrangement may appeal to the Canadian court.

22.     Given, among other things, the similarities between the CCAA and chapter 11, the Canadian court and monitor's significant oversight in CCAA proceedings and creditors' ability to meaningfully participate in such proceedings, U.S. courts have routinely and

consistently held that Canadian restructuring proceedings under the CCAA qualify as "foreign proceedings" under section 101(23) of the Bankruptcy Code. *See, e.g.*, *In re The Aldo Group Inc.*, No. 20-11060 (KBO) (Bankr. D. Del. May 8, 2020) [Docket No. 29]; *In re U.S. Steel Canada Inc.*, No. 17-11519 (MG) (Bankr. S.D.N.Y. June 29, 2017) [Docket No. 12]; *In re Thane Int'l, Inc.,* No. 15-12186 (KG) (Bankr. D. Del. Dec. 1, 2015) [Docket No 41]; *In re Essar Steel Algoma Inc.*, No. 15-12271 (BLS) (Bankr. D. Del. Dec 2, 2015) [Docket No. 100]; *In re Lone Pine Res. Inc.*, No. 13-12487 (BLS) (Bankr. D. Del. Oct, 18, 2013) [Docket No. 58]; *In re Sino-Forest Corp.*, No. 13-10361 (MG) (Bankr. S.D.N.Y. Apr. 15, 2013) [Docket No. 16]; *In re Xentel Inc.*, No. 13-10888 (KG) (Bankr. D. Del. May 17, 2013) [Docket No. 26]; *In re Cinram Int'l Inc.*, No. 12-11882 (KJC) (Bankr. D. Del. July 25 26, 2012) [Docket No. 97]; *In re Arctic Glacier Int'l Inc.*, No. 12-10605 (KG) (Bankr. D. Del. Mar. 16, 2012) [Docket No. 70]; *In re Nortel Networks Corp.*, No. 09-10164 (KG) (Bankr. D. Del. Feb. 27, 2009) [Docket No. 40].

### B.    The Foreign Representative is the authorized foreign representative.

23.    The chapter 15 petition(s) for recognition of a foreign proceeding must be filed by a foreign representative that is a person or body. *See* 11 U.S.C. § 1517(a)(2).  Section 101(24) of the Bankruptcy Code provides that:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).   Under the Bankruptcy Code, the term "person" includes any "individual, partnership, and corporation" that is not a governmental unit.

24.    These chapter 15 cases were commenced by the duly-appointed "foreign representative" of the Debtors within the meaning of the Bankruptcy Code.  First, the Foreign Representative is a corporation organized under the laws of Canada, and is not a governmental

unit, and therefore is a "person" within the meaning of the Bankruptcy Code.  Second, the Foreign Representative is the person specifically authorized by the Canadian Court to act as a foreign representative of the Canadian Proceeding and to file these chapter 15 cases on behalf of the Debtors.

25.     For these reasons, the Foreign Representative is a proper "foreign representative" within the meaning of the Bankruptcy Code.

### C.     The Petitions were properly filed and meet all applicable requirements of the Bankruptcy Code.

26.     To properly commence a chapter 15 case, a foreign representative must file a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code, *see* 11 U.S.C. §§ 1504, 1509(a) & 1515(a), and the petition must be accompanied by (i) a certified copy of the decision commencing the foreign proceeding and appointing the foreign representative, (ii) a certificate from the foreign court affirming such order exists, or (iii) other acceptable evidence that the foreign proceeding exists and the foreign representative has been duly appointed, *see id.* § 1515(b).  Additionally, the petition must be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.  *Id.* § 1515(c).  All documents must be in English or translated into English.  *See id.* § 1515(d).

27.     As required by sections 1504 and 1509 of the Bankruptcy Code, the Foreign Representative duly and properly commenced these chapter 15 cases by filing the Petitions under section 1515(a) accompanied by all documents and information required by sections 1515(b)–(d).  In particular, the Foreign Representative filed the Petitions with this Court directly as required by sections 1504, 1509(a) and 1515(a).  The Foreign Representative attached to the Petitions a certified copy of the Initial Order, which is the decision of the Canadian Court

commencing the Canadian Proceeding and appointing the Foreign Representative as foreign representative, thereby satisfying section 1515(b).  The forms of the Petitions include a verified statement certifying that the only foreign proceeding of which the Foreign Representative is aware is the Canadian Proceeding, thereby satisfying section 1515(c).  Finally, the Initial Order is in English, thereby satisfying section 1515(d).

28.     Accordingly, the Petitions were properly filed and meet all applicable requirements of the Bankruptcy Code.

> **D.     The Canadian Proceeding should be recognized as a foreign main proceeding.**

29.     The Canadian Proceeding should be recognized as a "foreign main proceeding," as defined in sections 101(23) and 1502(4) of the Bankruptcy Code.  A foreign proceeding will be recognized as a foreign main proceeding if "it is pending in the country where the debtor has the center of its main interests."  11 U.S.C. § 1517(b)(1).  Section 1516(c) of the Bankruptcy Code establishes a rebuttable presumption that the debtor's registered office is the debtor's center of main interests ("COMI").  *See* 11 U.S.C. § 1516(c).  When considering a debtor's COMI, courts may consider the analogous concept of an entity's "principal place of business" or "nerve center."  *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 132 n.10 (2d Cir. 2013).  As such, courts will look to factors such as the location of the debtor's headquarters, the location of those who actually manage the debtor, and the location of the debtor's primary assets, among other things, to determine the foreign debtor's COMI.  *Id.* at 130.  Additionally, a debtor's COMI is determined as of the date the chapter 15 case is commenced.  *In re O'Reilly*, 2019 WL 1325694, at *14 (Bankr. W.D. Pa. Mar. 22, 2019) (holding that "the presumptive date from which the Court is to ascertain the debtor's center of main interests and/or establishment is the date the Chapter 15 petition was filed

with this Court.") (citing *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 134 (2d Cir. 2013) and *In re Ran*, 607 F.3d 1017 (5th Cir. 2010)).

30.     The above factors support a finding that the Debtors' COMI is Canada.  As detailed in the Ross Declaration, the center of main interests for the Debtors is in Canada, because, among other things:

a.     Toronto serves as the centre for the Debtors' business enterprise. The Debtors, their affiliates and subsidiaries are all managed from Toronto on a consolidated basis;

b.     Lighthouse CA's principal place of business is located in Toronto. Lighthouse USA's principal place of business is also located in Toronto;

c.     The Debtors' Executive Management Team of President and Vice President reside in Toronto.  The Executive Management Team is responsible for making corporate decisions about all aspects of the business, including marketing, new business initiatives, and financial decisions;

d.     The Debtors' banking and cash management systems are also exclusively tied to Canada.  The Debtors' bank with the Royal Bank of Canada and a small portion with the Bank of Montreal. The Debtors' US affiliates and subsidiaries bank almost exclusively with an affiliate of the Royal Bank of Canada, being City National Bank.  The financial decisions of the Debtors, their affiliates and subsidiaries are made by the Executive Management Team, in Canada;

e.      In addition, the most vital people assisting with the business are located in Canada, including the Debtors' Financial Controller, Financial Consultant, Box Office Director, Head of Productions, Head of New Venue Development and Senior Production Manager, Marketing Director, Director of Sponsorship and Grants, Director of Retail, General Manager, and Associate Producers. Some of these vital people are contracted or employed through Lighthouse CA, while others are employed through Starvox Exhibits Inc., an entity incorporated in Canada;

f.      The advertising agency that the Debtors use is also located in Canada;

g.      In addition to the lead persons mentioned above, the majority of their respective teams are located in Canada.  For example, the majority of Lighthouse CA's production and installation teams under the direction of Corey Ross and one of Lighthouse CA's employees who resides in Canada.  When there is a new show, the production team builds most of the sets in Canada, including printing vinyls, and then travels to the city in the United States to create the sets and create the production.  The Canadian team typically enlists local employees or contractors to assist with the production;

h.      The Debtors' merchandise team, responsible for purchasing merchandise, products, and managing the stores are also based in Canada; and

i.      Employee decisions for the Debtors, including their affiliates and subsidiaries, are made in Toronto by the Executive Management Team and through the General Manager, Jessica Johnston.  Training and support

for employees of any of the Debtors' entities is facilitated in Toronto under the direction of Eugenia Protsko.

31.     Further, although Lighthouse USA has a significant number of U.S. creditors, because of the overwhelming centralization of the Debtors' operations in Canada, any U.S. creditor either knew or should have known that Lighthouse USA was operated and managed from Canada.

32.     As such, this Court and the Debtors' creditors should objectively view the Debtors to be conducting the administration of its affairs from Canada, and the COMI for each of the Debtors to be Canada.  Furthermore, courts have previously recognized CCAA proceedings for non-Canadian subsidiaries as "foreign main proceedings," where, as is the case here, they were part of a jointly administered CCAA proceeding with their Canadian parent and the debtor presented evidence, as here, of these entities' COMI being in Canada.  *See*, *e.g.*, *In re The Aldo Group Inc.*, No. 20-11060 (KBO) (Bankr. D. Del. May 8, 2020) [Docket No. 66]; *In re Pac. Exploration & Prod. Corp.*, No. 16-11189 (JLG) (Bankr. S.D.N.Y. June 10, 2016) [Docket No. 25]; *In re John Forsyth Shirt Co. Ltd.*, No. 13-10526 (SCC) (Bankr. S.D.N.Y. Mar. 18, 2013) [Docket No. 24]; *In re Essar Steel Algoma Inc.*, No. 15-12271 (BLS) (Bankr. D. Del. Dec. 2, 2015) [Docket No. 100]; *In re Talon Sys. Inc.*, No. 13-11811 (KJC) (Bankr. D. Del. Aug. 30, 2013) [Docket No. 49]; *In re Arctic Glacier Int'l Inc.*, No. 12-10605 (KG) (Bankr. D. Del. Mar. 16, 2012) [Docket No. 70]; *In re Catalyst Paper Corp.*, No. 12-10221 (PJW) (Bankr. D. Del. March 5, 2012) [Docket No. 89]; *In re Angiotech Pharm., Inc.*, No. 11-10269 (KG) (Bankr. D. Del. Feb. 22, 2011) [Docket No. 83].

33.     Accordingly, at the time the chapter 15 petitions were filed, the Debtors' COMI was in Canada.

### E.    The Foreign Representative is entitled to an order granting recognition.

34.    As described above, the Canadian Proceeding is a "foreign main proceeding" within the meaning of section 1502 of the Bankruptcy Code, the Foreign Representative applying for recognition is a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code, and the Petitions meet the requirements of section 1515 of the Bankruptcy Code.  Section 1517(a) of the Bankruptcy Code provides, in pertinent part, that "[s]ubject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding *shall* be entered if" the foregoing requirements are met.  11 U.S.C. §1517(a) (emphasis added).[2] Accordingly, the Foreign Representative respectfully submits that the Court should enter an order recognizing the Canadian Proceeding as a "foreign main proceeding" under the Bankruptcy Code.

### F.    In the alternative, the Canadian Proceeding should be recognized as a foreign nonmain proceeding.

35.    In the event this Court does not recognize the Canadian Proceeding as a foreign main proceeding, the Foreign Representative submits that the Canadian Proceeding should be recognized as a foreign nonmain proceeding as defined in sections 101(23) and 1502(5) of the Bankruptcy Code.

36.    A foreign proceeding will be recognized as a foreign nonmain proceeding if "the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending."  11 U.S.C. § 1517(b)(2).    Section 1502(2) defines

---

[2]    *See also* H.R. Rep. 109-31(I), 109 Cong., Sess. 2005, *reprinted in* 2005 U.S.C.C.A.N. 88, 169 at 175 (noting, in enacting chapter 15, that the "decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304(c) of the Bankruptcy Code.  The requirements of this section, which incorporates the definitions in section 1502 and sections 101(23) and (24), are all that must be fulfilled to attain recognition").

"establishment" as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2). When it is apparent that an entity conducts operations in the country where a foreign proceeding is pending, courts will recognize the proceeding as a foreign nonmain proceeding if foreign main proceeding recognition is denied. *See In re SPhinX, Ltd.*, 351 B.R. 103, 122 (Bankr. S.D.N.Y. 2006) *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007); *see also In re Fairfield Sentry Ltd.*, 2011 WL 4357421, at *10 n.8 (S.D.N.Y. Sept. 16, 2011) (agreeing with the Bankruptcy Court that if main recognition were not granted, nonmain recognition would have been appropriate because the debtor had an establishment, "i.e. a local place of business"). Like a debtor's COMI, a debtor's establishment is determined as of the date the chapter 15 case is commenced. *See*, *e.g.*, *O'Reilly*, 2019 WL 1325694 at *14 (holding that "the presumptive date from which the Court is to ascertain the debtor's center of main interests and/or establishment is the date the Chapter 15 petition was filed with this Court.").

37.     As discussed above, the Debtors clearly each have an establishment in Canada because, among other things, the Debtors' business operations, financing, and strategic decision-making are all located and/or executed from Canada. Moreover, from and after July 27, 2023, the Debtors, and all of their assets, undertakings, and properties, have been under the exclusive dominion and control of Lighthouse CA located in Toronto, Canada. Accordingly, at the time the chapter 15 petitions were filed, the Debtors' COMI was in Canada.

## II.     Additional relief under section 1521 is appropriate.

38.     In addition to the relief automatically provided by section 1520 of the Bankruptcy Code upon recognition of a foreign main proceeding, the Foreign Representative requests additional relief under section 1521 of the Bankruptcy Code to protect the Debtors' assets and their creditors' interests. Section 1521 of the Bankruptcy Code provides, in relevant

part, that the court may grant a foreign representative "any appropriate relief," including "any relief that may be available to a trustee," subject to certain limitations (which do not apply here) where necessary to effectuate the purpose of chapter 15 and to protect the debtor's assets and creditors' interests.  11 U.S.C. § 1521(a)(7).  Accordingly, under section 1521(a)(7) of the Bankruptcy Code, the Foreign Representative requests that the Court extend the protections afforded by section 365 of the Bankruptcy Code to the Debtors.

39.    Section 365 is a fundamental provision under the Bankruptcy Code that enables debtors to preserve valuable commercial relationships, including preventing counterparties from attempting to terminate their contracts or halt performance as a result of the debtor's insolvency.  *See In re Woskob*, 305 F.3d 177, 184–85 (3d Cir. 2002) (explaining that section 365 invalidates provisions of law or contract which specify that a bankruptcy filing per se will terminate or modify the contract); *In re DBSI, Inc.*, 409 B.R. 720, 728 (Bankr. D. Del. 2009).  It also enables the debtors to assume or assume and assign contracts that are beneficial and valuable, and reject those that are burdensome.  *See In re Fleming Companies, Inc.*, 499 F.3d 300, 304 (3d Cir. 2007) (stating that section 365 allows a trustee "to maximize the value of the debtor's estate by assuming executory contracts . . . that benefit the estate and rejecting those that do not").  Application of section 365 in these chapter 15 cases is necessary to protect against the disruption of and interference with liquidation efforts that would result from any attempt by a contract counterparty to exercise remedies or cease performance under any executory agreement with the Debtors.

40.    Although contract counterparties, including those whose contracts are governed by state laws in the United States, are subject to the jurisdiction of the Canadian Court and bound by the Initial Order, out of an abundance of caution and in order to fully protect the

Debtors' rights, the Foreign Representative seeks an order applying section 365 of the Bankruptcy Code in these chapter 15 cases.

41.    The Foreign Representative must have certainty that counterparties to United States contracts will not terminate or exercise remedies under their prepetition agreements and will continue performing thereunder.    Without the preservation of their contractual relationships, the Debtors and their creditors may lose the benefit of these agreements, litigation may ensue, and counterparties may obtain unfair advantages over other creditors.    Accordingly, applying section 365 of the Bankruptcy Code is warranted in these chapter 15 cases, similar to how it has been applied in other chapter 15 cases.    *See, e.g., In re The Aldo Group Inc.,* No. 20-11060 (KBO) (Bankr. D. Del. May 8, 2020), D.I. 66 (order applying section 365 in chapter 15 cases); *In re Kraus Carpet Inc.*, Case No. 18-12057 (KG) (Bankr. D. Del. Oct. 1, 2018), D.I. 46 (same); *In re RCR Int'l Inc.*, Case No. 18-10112 (LSS) (Bankr. D. Del. Feb. 13, 2018), D.I. 11 (same); *In re Axios Logistics Solutions, Inc.*, Case No. 17-10438 (BLS) (Bankr. D. Del. Mar. 28, 2017), D.I. 27 (same); *Essar Steel Algoma Inc.*, Case No. 15-12271 (BLS), D.I. 97 (Bankr. D. Del. Dec. 1, 2015) (same).

### III.    Provisional relief within the scope of section 1519 of the Bankruptcy Code is necessary and appropriate under the circumstances.

42.    By this Motion, the Foreign Representative seeks entry of the Provisional Order recognizing and enforcing the Initial Order on a provisional basis, and making sections 362 and 365(e) of the Bankruptcy Code applicable in these chapter 15 cases on a provisional basis pending entry of the Final Order.    The Provisional Order would also recognize and enforce the Foreign Representative's authority to operate the Debtors' businesses and administer their assets in the United States, consistent with the authority granted in the Initial Order.    This provisional relief is consistent with the Initial Order and is necessary and appropriate to maintain

the status quo and preserve the Debtors' assets in the period before the Court holds a hearing on recognition and entry of the Final Order.

43.     Under section 1517, an order recognizing a foreign proceeding may only be entered after notice and a hearing. *See* 11 U.S.C. § 1517(a). Under Bankruptcy Rule 2002(q), the notice period must be at least 21 days. *See* Fed. R. Bankr. P. 2002(q). Upon recognition of a proceeding as a foreign main proceeding, among other things, section 362 (the automatic stay) applies. *See* 11 U.S.C. § 1520(a)(1). Additionally, upon recognition of a foreign main proceeding, the foreign representative is authorized to operate the debtor's business in the United States. *See* 11 U.S.C. § 1520(a)(3). Absent provisional relief, there is no stay applicable in the United States during the period between filing the chapter 15 petitions and entry of a recognition order, nor is there any express authority under the Bankruptcy Code for the Foreign Representative to operate the Debtors' businesses or administer their assets. Therefore, provisional relief is necessary to protect the Debtors' assets during the period before the recognition hearing. This includes (i) staying under section 362 the commencement or continuation of actions against the Debtors and their assets in the United States; (ii) ensuring that contract counterparties in the United States continue performing by enforcing section 365(e) of the Bankruptcy Code; and (iii) authorizing the Foreign Representative to operate the Debtors' businesses and administer the Debtors' assets in the United States. Accordingly, certain provisional relief is necessary.

### A.     Provisional relief is available.

44.     Section 1519(a) of the Bankruptcy Code authorizes the Court to, among other provisional relief, stay execution against the debtor's assets, entrust the foreign representative with administration or realization of all or part of the debtor's assets located in the United States and otherwise authorize the foreign representative to take steps necessary or

desirable to protect and preserve the value of assets, and grant any relief available to a trustee (with exceptions not relevant here). *See* 11 U.S.C. §§ 1519(a)(1)–(3); 1521(a)(7). Extending the fundamental protections of the automatic stay of section 362 falls within this power. *See* 11 U.S.C. § 1519(a)(1) (authorizing a stay of execution against the debtor's assets). The same is true with respect to section 365(e). 11 U.S.C. §§ 1519(a)(3) (authorizing the court to grant on a provisional basis any relief available under section 1521(a)(7)); 1521(a)(7) (authorizing the court to grant any relief available to a trustee, with exceptions not relevant here). Moreover, the relief authorized by the Initial Order and under Canadian law is substantially similar to the relief available to a trustee under the Bankruptcy Code, and therefore the Court is merely extending temporary comity—comity that is fully consistent with relief available in a plenary U.S. case—to the Initial Order pending a recognition hearing. In addition, section 105(a) of the Bankruptcy Code further allows the Court to "issue any order . . . necessary or appropriate to carry out the provisions of [title 11]." 11 U.S.C. § 105(a).

45.     Courts within this jurisdiction have granted provisional relief similar to that which is sought herein, including provisionally recognizing and enforcing an order entered in a foreign proceeding and provisionally applying sections 362 and 365(e) of the Bankruptcy Code pending the recognition hearing, including in respect of Canadian CCAA proceedings. *See, e.g., In re The Aldo Group Inc.*, No. 20-11060 (KBO) (Bankr. D. Del. May 8, 2020), Docket No. 29 (order granting provisional relief, including recognition and enforcement of the initial order entered in a foreign proceeding, and application of section 362 and 365(e)); *In re Kraus Carpet Inc.*, Case No. 18-12057 (KG) (Bankr. D. Del. Sept. 12, 2018), D.I. 17 (same); *In re RCR Int'l Inc.*, Case No. 18-10112 (LSS) (Bankr. D. Del. Feb. 14, 2018), D.I. 18 (same); *In re Axios Logistics Solutions, Inc.*, Case No. 17-10438 (BLS) (Bankr. D. Del. Mar. 1, 2017), D.I. 13

(same); *Essar Steel Algoma Inc*., Case No. 15-12271 (BLS) (Bankr. D. Del. Nov. 10, 2015), D.I. 30 (same).

        **B.**        **The provisional relief requested satisfies the standard for an injunction.**

        46.      Relief under section 1519 of the Bankruptcy Code is available where the foreign representative can satisfy the standard for injunctive relief.  11 U.S.C. § 1519(e); *In re Innua Canada Ltd*., No. 09-16362, 2009 WL 1025088, at *3 (Bankr. D.N.J. Mar. 25, 2009).  In the Third Circuit, the factors considered for injunctive relief include (i) likelihood of success on the merits; (ii) whether irreparable harm will occur if the requested injunction is denied; (iii) granting preliminary relief will not result in greater harm to the nonmoving party; and (iv) the public interest favors such relief.  *U.S. v. Bell*, 414 F.3d 474, 478 n.4 (3d Cir. 2005) (citing *ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 n.2 (3d Cir. 1996)); *see also Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006) (citations omitted); *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citations omitted).  The Foreign Representative submits that this standard is satisfied here and, therefore, the Foreign Representative is entitled to the requested provisional relief under section 1519 of the Bankruptcy Code, including entry of the Provisional Order.

        **1.**        **There is a substantial likelihood of recognition of the Canadian Proceeding as a foreign main proceeding and application of requested additional Bankruptcy Code provisions.**

        47.      There is a compelling case for recognition of the Canadian Proceeding as a foreign main proceeding as set forth in section I of this Motion, *supra*, and incorporated herein by reference.  As set out in more detail above, the Canadian Proceeding is a "foreign proceeding" and the Foreign Representative is a "foreign representative" within the meaning of the Bankruptcy Code.  Additionally, the Petitions were filed in accordance with, and meet all the

applicable requirements of, chapter 15 of the Bankruptcy Code.  Finally, the Canadian

Proceeding is a "foreign main proceeding" because the Debtors have their center of main interest

in Canada.[3]

48.     Additionally, upon recognition of the Canadian Proceeding as a foreign

main proceeding, section 362 of the Bankruptcy Code will automatically apply in these chapter

15 cases under section 1520(a)(1) of the Bankruptcy Code and the Foreign Representative will

have authority to operate the Debtors' business and exercise the rights and powers of a trustee

under section 1520(a)(3) of the Bankruptcy Code.  *See* 11 U.S.C. § 1520(a)(1),(3).  Likewise, the

application of section 365(e) on a provisional basis, preventing contract counterparties from

terminating or refusing to perform under their prepetition contracts with the Debtors, is consistent

with the injunctive nature of the relief afforded by the automatic stay under section 362.

Furthermore, the relief is consistent with the Initial Order, which, if recognized, will be given

effect in the United States.  Thus, there is a substantial likelihood that the additional provisional

relief requested will ultimately be granted on a final basis on the merits.  Furthermore, as

discussed above, United States bankruptcy courts have consistently recognized that such relief is

available and appropriate in similar circumstances.

49.     For these reasons, it is substantially likely that the Debtors will receive

final approval of all of the relief requested.

**2.      Irreparable harm may result absent provisional relief.**

50.     Provisional recognition and relief under sections 362, 365(e) and 1519(a)

of the Bankruptcy Code in these cases is important to prevent irreparable damage to the interests

of the Debtors' estates, creditors, and the efficacy of the Canadian Proceeding.  These chapter 15

---

[3]      As noted above, even if this Court does not recognize the Canadian Proceeding as a "foreign
main proceeding," the Debtors each hold an establishment in Canada and thus the Canadian
Proceeding constitutes a "foreign nonmain proceeding."

cases were commenced for the purpose of obtaining the assistance of this Court to give effect in the United States to the Initial Order and other orders of the Canadian Court in the Canadian Proceeding. Although the Initial Order implements a stay preventing parties from taking actions against the Debtors and their assets wherever located, the Debtors have assets in the United States that may be subject to enforcement actions by certain creditors and litigants that may not believe they are bound by the Initial Order.[4] *See In re Daebo Int'l Shipping Co.*, 543 B.R. 47, 54 (Bankr. S.D.N.Y. 2015) (holding that "the Court finds that under Canadian law the stay order plainly was intended to have worldwide effect . . . . Canadian law (and the stay order) are clear, and it is consistent with the purpose of Chapter 15 to give effect to them.").

51.     Courts in this district have recognized the need to provide provisional relief in order to ensure the orderly distribution of a debtor's assets in a single proceeding, and prevent piecemeal enforcement against a debtor's assets across multiple jurisdictions. *See, e.g., In re The Aldo Group Inc.*, No. 20-11060 (KBO) (Bankr. D. Del. May 8, 2020), Docket No. 29 (granting recognition on a provisional basis); *In re Kraus Carpet Inc.*, Case No. 18-12057 (KG) (Bankr. D. Del. Sept. 12, 2018), D.I. 17 (same); *In re RCR Int'l Inc.*, Case No. 18-10112 (LSS) (Bankr. D. Del. Jan. 24, 2018), D.I. 11 (same); *In re Axios Logistics Solutions, Inc.*, Case No. 17-10438 (BLS) (Bankr. D. Del. Mar. 1, 2017), D.I. 13 (same); *In re Essar Steel Algoma Inc.*, Case No. 15-12271 (BLS) (Bankr. D. Del. Nov. 10, 2015), D.I. 30 (same). The provisional relief requested is necessary to protect against potential destruction of asset value and interference with centralized, comprehensive liquidation efforts pending entry of the Final Order. Without the relief, domestic creditors and contract counterparties, upon learning of the Debtors' insolvency proceedings in Canada, may result to self-help remedies, preferring themselves over the

---

[4]     The Foreign Representative reserves all rights and remedies with respect to any party that takes action against the Debtors or their assets inconsistent with the Initial Order and Canadian law.

collective judicial proceedings and priority scheme in Canada (which are substantially similar to chapter 11 of the Bankruptcy Code).  This would undermine and potentially irreparably impair the centralized nature and fundamental fairness of the Canadian Proceeding, and would be an affront to international comity and the cross-border insolvency regime.  Accordingly, to avoid the possibility of irreparable harm to the general interests of the Debtors' creditors and the Canadian Proceeding, the Foreign Representative requests that the provisional relief be granted.

### 3. Provisional relief will benefit creditors.

52.     As alluded to above, preserving the status quo by imposing the automatic stay, protecting contracts, and authorizing the Foreign Representative to operate the Debtors' businesses and exercise the rights of a trustee will not prejudice creditors.  Granting the request for provisional relief will ensure the value of the Debtors' assets is preserved, protected, and maximized for the benefit of and fair distribution to creditors in the order of priority, without the "race to the courthouse" or "self-help" that centralized insolvency regimes such as the CCAA and the Bankruptcy Code are specifically designed to forestall.

### 4. Public interest favors granting provisional relief.

53.     Provisional relief is consistent with the policies underlying the Bankruptcy Code, including the stay of individual creditor action and equitable treatment of all creditors according to priorities.  Moreover, granting the requested relief is in the public interest because it will facilitate the Foreign Representative's efforts to complete a court-supervised liquidation for the benefit of creditors and other stakeholders (including those in the United States).  Additionally, granting the provisional relief is in the public interest because it promotes cooperation between jurisdictions in cross-border insolvencies, which is an express purpose of chapter 15 of the Bankruptcy Code.  11 U.S.C. § 1501(a).

54.     For the reasons set forth herein, the Foreign Representative respectfully requests that, pending the hearing on the Final Order, the Provisional Order be approved in all respects and that the terms and provisions of the Provisional Order be implemented and that, after the Final Hearing, the Final Order be approved in all respects and the terms and provisions of the Final Order be implemented.

## NOTICE

55.     The Foreign Representative will provide notice of this Motion consistent with Local Rule 9013-1(m).   The Foreign Representative proposes to further notify all creditors and parties in interest of the filing of these chapter 15 petitions and the Foreign Representative's request for entry of the Final Order in the form and manner set forth in the *Motion of the Foreign Representative for Entry of an Order (I) Specifying Form and Manner of Service of the Recognition Hearing Notice Under Sections 105(a), 1514 and 1515 of the Bankruptcy Code and Bankruptcy Rules 2002 and 9008, (II) Scheduling Hearing, and (III) Granting Related Relief*, which was filed concurrently herewith.  In light of the nature of the relief requested, the Foreign Representative submits that no further notice is required.

WHEREFORE, the Foreign Representative respectfully requests that the Court: (a) enter the Provisional Order, substantially in the form attached hereto as **Exhibit A**; (b) enter the Final Order, upon notice and a hearing, substantially in the form attached hereto as **Exhibit B**; and (c) grant such other and further relief as it deems just and proper.

Dated:  July 27, 2023
        Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/  Derek C. Abbott*
Derek C. Abbott (No. 3367)
Tamara K. Mann (No. 5643)
1201 N. Market St., 16th Floor

Wilmington, DE 19801
Telephone: (302) 658-9200
Facsimile:  (302) 658-3989
dabbott@morrisnichols.com
tmann@morrisnichols.com

- and -

MILLER THOMSON LLP
Kyla Mahar
Gina Rhodes
40 King Street West, Suite 5800
Toronto Ontario
M5H 3S1, Canada
Telephone: (416) 595-8500
Facsimile:  (416) 595-8695
kmahar@millerthomson.com
grhodes@millerthomson.com

*Counsel for the Foreign Representative*