**EXHIBIT A**

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MADAM | ) | THURSDAY, THE 27TH |
| | ) | |
| JUSTICE KIMMEL | ) | DAY OF JULY 2023 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c.C-36 AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF LIGHTHOUSE IMMERSIVE INC. AND LIGHTHOUSE IMMERSIVE USA, INC. (the "**Applicants**")

**AMENDED AND RESTATED INITIAL ORDER**

**THIS APPLICATION**, made by the Applicants pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") was heard this day via Zoom Videoconference.

**ON READING** the Affidavit of Corey Ross sworn on July 27, 2023 and the Exhibits thereto (the "**Ross Affidavit**"), the pre-filing report of B. Riley Farber Inc., in its capacity as proposed Monitor of the Applicants ("**Monitor**") dated July 27, 2023, and the first report of the Monitor (the "**First Report**") dated August 1, 2023, and on being advised that the secured creditors who are likely to be affected by the charges created herein were given notice, and on hearing the submissions of counsel for the Applicants and the wholly owned subsidiaries of the Applicants set out in Schedule "A" (the "**Subsidiaries**"), counsel for the Monitor and counsel for the DIP Lender (as defined below), no one else appearing although duly served as appears from

the affidavits of service sworn on July 27, 2023 and August 1, 2023, and on reading the consent of the Monitor,

**SERVICE AND DEFINITIONS**

1.     **THIS COURT ORDERS** that the time for service of the Notice of Application and the Application Record is hereby abridged and validated so that this Application is properly returnable today and hereby dispenses with further service thereof.

2.     **THIS COURT ORDERS** that, for avoidance of doubt, reference in this Order to the "date of this Order", "the date hereof" or similar phrases refer to the date the Initial Order of this Court was granted in the within proceedings, being July 27, 2023.

**APPLICATION**

3.     **THIS COURT ORDERS AND DECLARES** that the Applicants are companies to which the CCAA applies.

**PLAN OF ARRANGEMENT**

4.     **THIS COURT ORDERS** that the Applicants shall have the authority to file and may, subject to further order of this Court, file with this Court a plan of compromise or arrangement (hereinafter referred to as the "**Plan**").

**POSSESSION OF PROPERTY AND OPERATIONS**

5.     **THIS COURT ORDERS** that the Applicants shall remain in possession and control of their current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the "**Property**").  Subject to further Order of

this Court, the Applicants shall continue to carry on business in a manner consistent with the preservation of their businesses (the "**Business**") and Property. The Applicants are authorized and empowered to continue to retain and employ the employees, consultants, agents, experts, accountants, counsel and such other persons (collectively "**Assistants**") currently retained or employed by them, with liberty to retain such further Assistants as they deem reasonably necessary or desirable in the ordinary course of business or for the carrying out of the terms of this Order.

6.      **THIS COURT ORDERS** that the Applicants shall be entitled to continue to utilize the banking and cash management system currently in place as described in the Ross Affidavit or replace it with another substantially similar central cash management system (the "**Cash Management System**") and that any present or future bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Applicants of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Applicants, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

7.      **THIS COURT ORDERS** that the Applicants shall be entitled but not required to pay the following expenses, whether incurred prior to or after the date of this Order:

(a)     all outstanding and future wages, salaries, employee and pension benefits, vacation pay, expenses to employees, and such similar payments to independent contractors, payable on or after the date of this Order, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements; and

(b)     the fees and disbursements of any Assistants retained or employed by the Applicants in respect of these proceedings, at their standard rates and charges.

8.     **THIS COURT ORDERS** that, except as otherwise provided to the contrary herein, the Applicants shall be entitled but not required to pay all reasonable expenses incurred by the Applicants in carrying on the Business in the ordinary course after this Order, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a)     all expenses and capital expenditures reasonably necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors and officers insurance), maintenance and security services; and

(b)     payment for goods or services actually supplied to the Applicants following the date of this Order.

9.     **THIS COURT ORDERS** that the Applicants shall remit, in accordance with legal requirements, or pay:

(a)     any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from employees' wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan and (iii) income taxes;

(b)     all goods and services, or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Applicants in connection with the sale of goods and services by the Applicants, but only where such Sales Taxes are accrued or collected after the date of this Order, or where such Sales Taxes were accrued or collected prior to the date of this Order but not required to be remitted until on or after the date of this Order, and

(c)     any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal realty, municipal business or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors and which are attributable to or in respect of the carrying on of the Business by the Applicants.

10.     **THIS COURT ORDERS** that until a real property lease is disclaimed in accordance with the CCAA, the Applicants shall pay all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable to the landlord(s) under the lease) or as otherwise may be negotiated between the Applicants and the landlord(s) from time to time ("**Rent**"), for the period commencing from and including the date of this Order, twice-monthly in equal payments on the first and fifteenth day of each month, in advance (but not in arrears). On the date of the first of such payments, any Rent relating to the period commencing from and including the date of this Order shall also be paid.

11.     **THIS COURT ORDERS** that, except as specifically permitted herein, the Applicants are hereby directed, until further Order of this Court: (a) to make no payments of principal,

interest thereon or otherwise on account of amounts owing by the Applicants to any of their creditors as of this date; (b) to grant no security interests, trust, liens, charges or encumbrances upon or in respect of any of their Property; and (c) to not grant credit or incur liabilities except in the ordinary course of the Business.

**RESTRUCTURING**

12.    **THIS COURT ORDERS** that the Applicants shall, subject to such requirements as are imposed by the CCAA and such covenants as may be contained in the Definitive Documents (as hereinafter defined), have the right to:

(a)    permanently or temporarily cease, downsize or shut down any of their business or operations, and to dispose of redundant or non-material assets not exceeding $250,000 in any one transaction or $1,500,000 in the aggregate;

(b)    terminate the employment of such of their employees or temporarily lay off such of their employees as they deem appropriate; and

(c)    pursue all avenues of sale or investment or refinancing of their Business or Property, in whole or part, subject to prior approval of this Court being obtained before any material sale or refinancing,

all of the foregoing to permit the Applicants to proceed with an orderly restructuring of the Business (the "**Restructuring**").

13.    **THIS COURT ORDERS** that the Applicants shall provide each of the relevant landlords with notice of the Applicants' intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal.  The relevant landlord shall be entitled

to have a representative present in the leased premises to observe such removal and, if the landlord disputes the Applicants' entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors, such landlord and the Applicants, or by further Order of this Court upon application by the Applicants on at least two (2) days notice to such landlord and any such secured creditors. If the Applicants disclaim the lease governing such leased premises in accordance with Section 32 of the CCAA, they shall not be required to pay Rent under such lease pending resolution of any such dispute (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer of the lease shall be without prejudice to the Applicants' claim to the fixtures in dispute.

14.     **THIS COURT ORDERS** that if a notice of disclaimer is delivered pursuant to Section 32 of the CCAA, then (a) during the notice period prior to the effective time of the disclaimer, the landlord may show the affected leased premises to prospective tenants during normal business hours, on giving the Applicants and the Monitor 24 hours' prior written notice, and (b) at the effective time of the disclaimer, the relevant landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims or rights such landlord may have against the Applicants in respect of such lease or leased premises, provided that nothing herein shall relieve such landlord of its obligation to mitigate any damages claimed in connection therewith.

**NO PROCEEDINGS AGAINST THE APPLICANTS OR THE PROPERTY**

15.     **THIS COURT ORDERS** that until and including October 6, 2023, or such later date as this Court may order (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**") shall be commenced or continued against or in respect of the

Applicants or the Monitor, or affecting the Business or the Property, except with the written consent of the Applicants and the Monitor, or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Applicants or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

## NO EXERCISE OF RIGHTS OR REMEDIES

16.    **THIS COURT ORDERS** that during the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the Applicants or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the Applicants and the Monitor, or leave of this Court, provided that nothing in this Order shall (i) empower the Applicants to carry on any business which the Applicants are not lawfully entitled to carry on, (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien.

## NO INTERFERENCE WITH RIGHTS

17.    **THIS COURT ORDERS** that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, lease, licence or permit in favour of or held by the Applicants, except with the written consent of the Applicants and the Monitor, or leave of this Court.

**CONTINUATION OF SERVICES**

18.     **THIS COURT ORDERS** that during the Stay Period, all Persons having oral or written agreements with the Applicants or statutory or regulatory mandates for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation services, utility or other services to the Business or the Applicants, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Applicants, and that the Applicants shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Applicants in accordance with normal payment practices of the Applicants or such other practices as may be agreed upon by the supplier or service provider and each of the Applicants and the Monitor, or as may be ordered by this Court.

**NON-DEROGATION OF RIGHTS**

19.     **THIS COURT ORDERS** that, notwithstanding anything else in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of lease or licensed property or other valuable consideration provided on or after the date of this Order, nor shall any Person be under any obligation on or after the date of this Order to advance or re-advance any monies or otherwise extend any credit to the Applicants.  Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

**PROCEEDINGS AGAINST DIRECTORS AND OFFICERS**

20.    **THIS COURT ORDERS** that during the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against any of the former, current or future directors or officers of the Applicants with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of the Applicants whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Applicants, if one is filed, is sanctioned by this Court or upon further order of this Court.

**DIRECTORS' AND OFFICERS' INDEMNIFICATION AND CHARGE**

21.    **THIS COURT ORDERS** that the Applicants shall indemnify their directors and officers against obligations and liabilities that they may incur as directors or officers of the Applicants after the commencement of the within proceedings, except to the extent that, with respect to any officer or director, the obligation or liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

22.    **THIS COURT ORDERS** that the directors and officers of the Applicants shall be entitled to the benefit of and are hereby granted a charge (the "**Directors' Charge**") on the Property, which charge shall not exceed an aggregate amount of $500,000, as security for the indemnity provided in paragraph 23 of this Order. The Directors' Charge shall have the priority set out in paragraphs 39 and 41 herein.

23.    **THIS COURT ORDERS** that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the

benefit of the Directors' Charge, and (b) the Applicants' directors and officers shall only be

entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under

any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to

pay amounts indemnified in accordance with paragraph 22 of this Order.

**APPOINTMENT OF MONITOR**

24.    **THIS COURT ORDERS** that B. Riley Farber Inc. is hereby appointed pursuant to the

CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of

the Applicants with the powers and obligations set out in the CCAA or set forth herein and that

the Applicants and their respective shareholders, officers, directors, and Assistants shall advise

the Monitor of all material steps taken by the Applicants pursuant to this Order, and shall co-

operate fully with the Monitor in the exercise of its powers and discharge of its obligations and

provide the Monitor with the assistance that is necessary to enable the Monitor to adequately

carry out the Monitor's functions.

25.    **THIS COURT ORDERS** that the Monitor, in addition to its prescribed rights and

obligations under the CCAA, is hereby directed and empowered to:

(a)    monitor the Applicants' receipts and disbursements;

(b)    report to this Court at such times and intervals as the Monitor may deem appropriate
       with respect to matters relating to the Property, the Business, and such other matters
       as may be relevant to the proceedings herein;

(c)    assist the Applicants, to the extent required by the Applicants, in their dissemination,
       to the DIP Lender and its counsel on a bi-weekly basis of financial and other
       information as agreed to between the Applicants and the DIP Lender which may be

used in these proceedings including reporting on a basis to be agreed with the DIP Lender;

(d)    advise the Applicants in their preparation of the Applicants' cash flow statements and reporting required by the DIP Lender, which information shall be reviewed with the Monitor and delivered to the DIP Lender and its counsel on a periodic basis to the DIP Lender;

(e)    advise the Applicants in their development of the Plan and any amendments to the Plan;

(f)    assist the Applicants, to the extent required by the Applicants, with the holding and administering of creditors' or shareholders' meetings for voting on the Plan;

(g)    have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Applicants, to the extent that is necessary to adequately assess the Applicants' business and financial affairs or to perform its duties arising under this Order;

(h)    be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order; and

(i)    perform such other duties as are required by this Order or by this Court from time to time.

26.    **THIS COURT ORDERS** that the Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the

Business and shall not, by fulfilling its obligations hereunder, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof.

27.    **THIS COURT ORDERS** that nothing herein contained shall require the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "**Possession**") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the Ontario *Environmental Protection Act*, the *Ontario Water Resources Act*, or the Ontario *Occupational Health and Safety Act* and regulations thereunder (collectively, the "**Environmental Legislation**"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation.  The Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

28.    **THIS COURT ORDERS** that that the Monitor shall provide any creditor of the Applicants and the DIP Lender with information provided by the Applicants in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph.  In the case of information that the Monitor has been advised by the Applicants is confidential, the Monitor shall not provide such information to

creditors unless otherwise directed by this Court or on such terms as the Monitor and the Applicants may agree.

29.    **THIS COURT ORDERS** that, in addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the protections afforded the Monitor by the CCAA or any applicable legislation.

30.    **THIS COURT ORDERS** that the Monitor, counsel to the Monitor and counsel to the Applicants shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, whether incurred prior to, on, or subsequent, to the date of this Order by the Applicants as part of the costs of these proceedings. The Applicants are hereby authorized and directed to pay the accounts of the Monitor, counsel for the Monitor and counsel for the Applicants on a bi-weekly basis and, in addition, the Applicants are hereby authorized to pay to the Monitor, counsel to the Monitor, and Canadian and US counsel to the Applicants, retainers in the amounts of US $75,000, US $50,000, US $75,000 and US $75,000, respectively, to be held by them as security for payment of their respective fees and disbursements outstanding from time to time.

31.    **THIS COURT ORDERS** that the Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the Commercial List of the Ontario Superior Court of Justice.

32.    **THIS COURT ORDERS** that the Monitor, counsel to the Monitor, if any, and the Applicants' counsel shall be entitled to the benefit of and are hereby granted a charge (the

"**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of US $500,000, as security for their professional fees and disbursements incurred at the standard rates and charges of the Monitor and such counsel, both before and after the making of this Order in respect of these proceedings.  The Administration Charge shall have the priority set out in paragraphs 39 and 41 hereof.

**DIP FINANCING**

33.    **THIS COURT ORDERS** that the Applicants and the Subsidiaries are hereby authorized and empowered to obtain and borrow under a credit facility from SCS Finance, Inc. (the "**DIP Lender**") in order to finance the Applicants' and the Subsidiaries' working capital requirements and other general corporate purposes and capital expenditures, provided that borrowings under such credit facility shall not exceed US $3,500,000 (plus interest, fees, and expenses in accordance with the DIP Term Sheet (as defined below)) unless permitted by further Order of this Court.

34.    **THIS COURT ORDERS** that such credit facility shall be on the terms and subject to the conditions set forth in the DIP Term Sheet between the Applicants, the Subsidiaries and the DIP Lender dated as of July 26, 2023, as amended from time to time (the "**DIP Term Sheet**"), filed.

35.    **THIS COURT ORDERS** that the Applicants and the Subsidiaries are hereby authorized and empowered to execute and deliver such credit agreements, mortgages, charges, hypothecs and security documents, guarantees and other definitive documents (collectively, the "**Definitive Documents**"), as are contemplated by the DIP Term Sheet or as may be reasonably required by the DIP Lender pursuant to the terms thereof, and the Applicants are hereby authorized and directed to pay and perform all of their indebtedness, interest, fees, liabilities and obligations to

the DIP Lender under and pursuant to the DIP Term Sheet and the Definitive Documents as and when the same become due and are to be performed, notwithstanding any other provision of this Order.

36.     **THIS COURT ORDERS** that the DIP Lender shall be entitled to the benefit of and is hereby granted a charge (the "**DIP Lender's Charge**") on the Property and the Subsidiaries' current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof, which DIP Lender's Charge shall not secure an obligation that exists before this Order is made.  The DIP Lender's Charge shall have the priority set out in paragraphs 39 and 41 hereof.

37.     **THIS COURT ORDERS** that, notwithstanding any other provision of this Order:

(a)     the DIP Lender may take such steps from time to time as it may deem necessary or appropriate to file, register, record or perfect the DIP Lender's Charge or any of the Definitive Documents;

(b)     upon the occurrence of an event of default under the Definitive Documents or the DIP Lender's Charge, the DIP Lender, upon five (5) business days written notice to the Applicants and the Monitor, may exercise any and all of its rights and remedies against the Applicants or the Property under or pursuant to the DIP Term Sheet, Definitive Documents and the DIP Lender's Charge, including without limitation, to cease making advances to the Applicants and set off and/or consolidate any amounts owing by the DIP Lender to the Applicants against the obligations of the Applicants to the DIP Lender under the DIP Term Sheet, the Definitive Documents or the DIP Lender's Charge, to make demand, accelerate payment and give other notices, or to

apply to this Court for the appointment of a receiver, receiver and manager or interim receiver, or for a bankruptcy order against the Applicants and for the appointment of a trustee in bankruptcy of the Applicants; and

(c)     the foregoing rights and remedies of the DIP Lender shall be enforceable against any trustee in bankruptcy, interim receiver, receiver or receiver and manager of the Applicants or the Property.

38.     **THIS COURT ORDERS AND DECLARES** that the DIP Lender shall be treated as unaffected in any plan of arrangement or compromise filed by the Applicants under the CCAA, or any proposal filed by the Applicants under the *Bankruptcy and Insolvency Act* of Canada (the "**BIA**"), with respect to any advances made under the Definitive Documents.

**VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER**

39.     **THIS COURT ORDERS** that the priorities of the Directors' Charge, the Administration Charge and the DIP Lender's Charge, as among them, shall be as follows:

First – Administration Charge (to the maximum amount of US $500,000);

Second – DIP Lender's Charge; and

Third – Directors' Charge (to the maximum amount of US $500,000).

40.     **THIS COURT ORDERS** that the filing, registration or perfection of the Directors' Charge, the Administration Charge or the DIP Lender's Charge (collectively, the "**Charges**") shall not be required, and that the Charges shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered, recorded or perfected subsequent

to the Charges coming into existence, notwithstanding any such failure to file, register, record or perfect.

41.    **THIS COURT ORDERS** that each of the Charges (all as constituted and defined herein) shall constitute a charge on the Property and such Charges shall rank in priority to all other security interests, trusts, liens, charges and encumbrances, claims of secured creditors, statutory or otherwise (collectively, "**Encumbrances**") in favour of any Person.

42.    **THIS COURT ORDERS** that except as otherwise expressly provided for herein, or as may be approved by this Court, the Applicants shall not grant any Encumbrances over any Property that rank in priority to, or *pari passu* with, any of the Charges, unless the Applicants also obtain the prior written consent of the Monitor, the DIP Lender and the beneficiaries of the Charges, or further Order of this Court.

43.    **THIS COURT ORDERS** that the Directors' Charge, the Administration Charge, the DIP Term Sheet, the Definitive Documents and the DIP Lender's Charge shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "**Chargees**") and/or the DIP Lender thereunder shall not otherwise be limited or impaired in any way by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to BIA, or any bankruptcy order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, sublease, offer to lease or other agreement (collectively, an

"**Agreement**") which binds the Applicants, and notwithstanding any provision to the contrary in any Agreement:

(a)     neither the creation of the Charges nor the execution, delivery, perfection, registration or performance of the DIP Term Sheet or the Definitive Documents shall create or be deemed to constitute a breach by any of the Applicants of any Agreement to which it is a party;

(b)     none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the Applicants entering into the DIP Term Sheet, the creation of the Charges, or the execution, delivery or performance of the Definitive Documents; and

(c)     the payments made by the Applicants pursuant to this Order, the DIP Term Sheet or the Definitive Documents, and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

44.     **THIS COURT ORDERS** that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Applicants' interest in such real property leases.

**SERVICE AND NOTICE**

45.     **THIS COURT ORDERS** that the Monitor shall (i) without delay, publish in The Globe & Mail for one (1) week, a notice containing the information prescribed under the CCAA, (ii) within five (5) business days after the date of this Order, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, in the prescribed manner, a notice to every known creditor who has a claim against any of the Applicants of more than $1000, and (C)

prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder.

46.     **THIS COURT ORDERS** that the E-Service Protocol of the Commercial List (the "**Protocol**") is approved and adopted by reference herein and, in this proceeding, the service of documents made in accordance with the Protocol (which can be found on the Commercial List website at [http://www.ontariocourts.ca/scj/practice/practice-directions/toronto/e-service-protocol/](http://www.ontariocourts.ca/scj/practice/practice-directions/toronto/e-service-protocol/)) shall be valid and effective service.  Subject to Rule 17.05 this Order shall constitute an order for substituted service pursuant to Rule 16.04 of the Rules of Civil Procedure. Subject to Rule 3.01(d) of the Rules of Civil Procedure and paragraph 21 of the Protocol, service of documents in accordance with the Protocol will be effective on transmission.  This Court further orders that a Case Website shall be established in accordance with the Protocol with the following URL: [https://farbergroup.com/engagements/lighthouse-immersive/](https://farbergroup.com/engagements/lighthouse-immersive/).

47.     **THIS COURT ORDERS** that if the service or distribution of documents in accordance with the Protocol is not practicable, the Applicants and the Monitor are at liberty to serve or distribute this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or facsimile transmission to the Applicants' creditors or other interested parties at their respective addresses as last shown on the records of the respective Applicants and that any such service or distribution by courier, personal delivery or facsimile transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

**FOREIGN PROCEEDINGS AND FOREIGN REPRESENTATIVE**

48.     **THIS COURT ORDER THAT** Lighthouse Immersive Inc. be and is hereby authorized and empowered to act as a foreign representative (the "**Foreign Representative**") in respect of these proceedings for the purpose of having these proceedings recognized in a foreign jurisdiction.

49.     **THIS COURT ORDER THAT** the Foreign Representative be and is hereby authorized to apply for foreign recognition of these proceedings, as necessary or advisable, in any jurisdiction outside of Canada, including without limitation, the United States pursuant to Chapter 15 of Title 11 of the United States Code 11 U.S.C., § 101 – 1532**.**

**GENERAL**

50.     **THIS COURT ORDERS** that the Applicants or the Monitor may from time to time apply to this Court for advice and directions in the discharge of their powers and duties hereunder.

51.     **THIS COURT ORDERS** that nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Applicants, the Business or the Property.

52.     **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to

give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

53.     **THIS COURT ORDERS** that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order, and that the Applicants are authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada.

54.     **THIS COURT ORDERS** that any interested party (including the Applicants and the Monitor) may apply to this Court to vary or amend this Order on not less than seven (7) days notice to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

55.     **THIS COURT ORDERS** that this Order and all of its provisions are effective as of 12:01 a.m. Eastern Standard/Daylight Time on the date of this Order.

56.     **THIS COURT ORDERS** that this Order is effective from the date that it is made and is enforceable without any need for entry and filing.

Digitally signed by
Jessica Kimmel
Date: 2023.08.03
11:47:50 -04'00'

Schedule "A"
**Subsidiaries**

(a)    Lighthouse Immersive Las Vegas, LLC;

(b)    Lighthouse Immersive Denver, LLC;

(c)    Lighthouse Immersive Detroit, LLC;

(d)    Lighthouse Immersive Cleveland, LLC;

(e)    Lighthouse Immersive Columbus, LLC;

(f)    Lighthouse Immersive Nashville, LLC;

(g)    Lighthouse Artspace Kansas City, LLC;

(h)    Lighthouse Immersive San Antonio, LLC;

(i)    Lighthouse Immersive Madison, LLC; and

(j)    Lighthouse Immersive Orlando, LLC.

Court File No.: CV-23-00703509-00CL

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c.C-36 AS AMENDED
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
LIGHTHOUSE IMMERSIVE INC. et al.

*ONTARIO*
**SUPERIOR COURT OF JUSTICE -
COMMERCIAL LIST**

Proceeding commenced at TORONTO

**AMENDED AND RESTATED
INITIAL ORDER
(DATED JULY 27, 2023)**

**MILLER THOMSON** LLP
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON Canada  M5H 3S1

**Kyla Mahar LSO#: 44182G**
kmahar@millerthomson.com
Tel: 416.597.4303

**Gina Rhodes LSO#: 78849U**
grhodes@millerthomson.com
Tel: 416.597.4321

Lawyers for the Applicants



ONTARIO SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

# COUNSEL SLIP/ENDORSEMENT

**COURT FILE NO.:**     CV-23-00703509-00CL          **DATE:**  **3 August 2023**

**NO. ON LIST:**   **3**

**TITLE OF PROCEEDING:**     **IN THE MATTER OF A PLAN OF COMPROMISE OR
ARRANGEMENT OF LIGHTHOUSE IMMERSIVE INC. AND
LIGHTHOUSE IMMERSIVE USA, INC.**

**BEFORE JUSTICE:**     **KIMMEL**

---

### PARTICIPANT INFORMATION

**For Plaintiff, Applicant, Moving Party, Crown:**

| Name of Person Appearing | Name of Party | Contact Info |
|---|---|---|
| Kyla Mahar | Lawyer for the Applicant, LIGHTHOUSE IMMERSIVE INC. and LIGHTHOUSE IMMERSIVE USA, INC. | kmahar@millerthomson.com |
| Gina Rhodes | Lawyer for the Applicant, LIGHTHOUSE IMMERSIVE INC. and LIGHTHOUSE IMMERSIVE USA, INC. | grhodes@millerthomson.com |

**For Defendant, Respondent, Responding Party, Defence:**

| Name of Person Appearing | Name of Party | Contact Info |
|---|---|---|
|  |  |  |
|  |  |  |

**For Other, Self-Represented:**

| Name of Person Appearing | Name of Party | Contact Info |
|---|---|---|
| Rebecca Kennedy | Lawyer for the Monitor | rkennedy@tgf.ca |

| Rachel Fielding | Lawyer for the Monitor | rfielding@tgf.ca |
| Hylton Levy | Monitor | hlevy@brileyfin.com |
| Allan Nackan | Monitor | anackan@brileyfin.com |
| Steven Weisz | Counsel for the DIP Lender | sweisz@cozen.com |

**ENDORSEMENT OF JUSTICE KIMMEL:**

1. The court granted an initial order on July 27, 2023 (the "Initial Order"), with the come-back hearing scheduled for today.  Much of the relief sought today was contemplated by the Initial Order and the reasons for granting it continue to apply.  Those reasons can be found in the court's preliminary endorsement of July 27, 2023 and supplementary reasons released July 31, 2023 in this matter.

2. Since the Initial Order was granted, and as had been contemplated, the applicants made filings in the United States  pursuant to Chapter 15 of Title 11 of the United States Code, 11 U.S.C. §101-1532 (the "US Bankruptcy Code").  A provisional order (including a stay) was granted by that court, with a final hearing return date now set for August 24, 2023.

3. The immediate concern that led to the filings last week, of the anticipated application by Impact/LHM for a confession of judgment for $16 million representing the full amount of the amounts payable under the LHM Settlement that was scheduled for a July 28, 2023 hearing date in Delaware, was stayed.

4. At this come-back hearing, the applicants seek the court's approval of certain amendments to the Initial Order in a proposed Amended and Restated Initial Order ("ARIO"), including: an extension of the Stay Period for 60 days to October 6, 2023 and increases in the Administration, DIP Lender's and Directors' Charges (the "Charges"). All of this was contemplated at the initial hearing and supported with evidence from the applicants and supported by the Monitor's pre-filing report.  It is now further supported by the Monitor's First report dated August 1, 2023 (the "First Report").

5. There are no material changes to what was contemplated.  The requested increases to the Charges are supported by the applicants' cash flow and anticipated expenses and potential exposures that has been reviewed by and are considered to be reasonable and appropriate by the Monitor, in the circumstances and considering the complexity of the CCAA Proceedings.  The DIP Lender also supports the increases to the Charges.

6. It is noted that the increase to the Directors' Charge to $500,000 represents estimated exposure for wages and source deductions for two pay periods that will occur during the extended Stay Period.

7. Most of the new provisions now contained in the ARIO track the Commercial List Model Order and have been incorporated because they are applicable now that the initial Stay Period has ended and the CCAA proceeding is moving forward.   They contemplate a SISP and plan for liquidating redundant inventory and equipment that is expected to be developed during the next 60 days.   The applicants will be seeking court approval of those once they have been developed with the input of the Monitor and others, before embarking upon them.  No further hearing dates have been scheduled.  It is expected that the parties will attend on a 9:30 scheduling appointment when they are ready to schedule any further steps.

8. In the meantime, the ARIO provides for continuing relief and breathing room while the applicants carry on their business and deal with third parties.  Specific allowance is made for, among other things, the past and future payment of not only employees but also independent contractors who provide similar services to employees and who have been or may need to be engaged to carry on the business and to wind-down certain shows that are scheduled to close during the extended Stay Period.  The Monitor has reviewed and recommends these payments in its First Report

9. The Monitor supports all of the proposed changes in the ARIO. There is no opposition.

10. The authority for the stay extension and the other proposed amendments to the Initial Order in the ARIO can be found in s. 11 of the CCAA.  I am satisfied that the applicants are continuing to act in good faith and with due diligence and that the proposed amendments to the Initial Order are justified and necessary.

11. The Amended and Restated Initial Order dated July 27, 2023 may issue in the form signed by me today.

KIMMEL J.