## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 15 |
| Lighthouse Immersive Inc., *et al.* | Case No. 23-11021 (LSS) |
| Debtors in a Foreign Proceeding.[1] | Jointly Administered |
| | **Requested Hearing Date on Recognition of  CCAA Orders:** At the Court's earliest convenience **Requested Objection Deadline:** Noon one business day prior to the Hearing Date |

## MOTION OF THE FOREIGN REPRESENTATIVE FOR ENTRY OF AN ORDER (A)(I) RECOGNIZING AND ENFORCING THE CCAA SISP ORDER, (II) RECOGNIZING AND ENFORCING THE CCAA DIP INCREASE ORDER, (III) RECOGNIZING AND ENFORCING THE CCAA SEALING ORDER, AND (IV) RECOGNIZING AND ENFORCING THE CCAA STAY EXTENSION ORDER, AND (B)(I) RECOGNIZING AND ENFORCING THE CANADIAN APPROVAL AND VESTING ORDER, (II) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, AND (III) GRANTING RELATED RELIEF

Lighthouse Immersive Inc., in its capacity as foreign representative (the "Foreign Representative") to the above-captioned debtors (the "Debtors"), hereby moves (the "Motion"), for (i) entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Recognition Order") recognizing and giving effect in the United States to (a) the *Order (Approval of Sale and Investment Solicitation Process and Stalking Horse Agreement)* (the "CCAA SISP Order")[2] issued by the Superior Court of Justice (Commercial List) in Ontario, Canada (the

---

[1]    The Debtors and the last four digits of its U.S. Federal Employer Identification Numbers or other unique identifier are as follows: Lighthouse Immersive Inc. (9411) (Ontario Corporation No.) and Lighthouse Immersive USA Inc. (2401) (FEIN).  The Debtors' mailing address is 640 Briar Hill Avenue, Toronto, Ontario, Canada, M5N 1N2.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the CCAA SISP Order or the Sale Procedures, as applicable.

"Canadian Court") on October 13, 2023, (b) the *Order (DIP Increase and Approval of Monitor's Conduct)* (the "CCAA DIP Increase Order"), (c) the *Order (Sealing Confidential Appendix)* (the "CCAA Sealing Order"), and (d) the *Order (Stay Extension)* (the "CCAA Stay Extension Order"), and together with the CCAA SISP Order, CCAA DIP Increase Order, and the CCAA Sealing Order, the "CCAA Orders") and (ii) entry of an order substantially in the form attached hereto as **Exhibit B** (the "Proposed Sale Order") (a) recognizing and enforcing in the United States the approval and vesting order (the "Canadian Sale Order,") to be issued by the Canadian Court for the sale (the "Sale") of substantially all of the Debtors' assets, (the "Purchased Assets"), to SCS Finance, Inc. (the "Stalking Horse Purchaser") pursuant to that certain asset purchase agreement (the "Stalking Horse Purchase Agreement"), the form of which is attached as Appendix F to the Second Monitor's Report (as defined below), subject to the solicitation of higher or otherwise better offers for the Purchased Assets; (b) approving, under section 363 of the Bankruptcy Code, the Sale of the Debtors' right, title, and interest in and to the Purchased Assets to the Purchaser, free and clear of all liens, claims, encumbrances and other interests; and (c) granting related relief. In support of this Motion, the Foreign Representative relies on and incorporates by reference (a) the *Declaration of Corey Ross in Support of (I) Chapter 15 Petitions for Recognition of Foreign Main Proceeding; (II) Motion of the Foreign Representative for Entry of Provisional and Final Relief in Aid of Foreign Main Proceeding; and (III) Certain Related Relief* (the "Ross Declaration") filed on July 27, 2023 (D.I. 2) and (b) the *Second Report of the Monitor* filed on October 5, 2023 (the "Second Monitor's Report"), (c) the *Supplemental Second Report of the Monitor* filed on October 12, 2023 (the "Supplemental Second Report")[3] filed in the Canadian

---

[3]     On October 13, 2023, the Canadian Court entered an Order sealing Confidential Appendix A to the Supplemental Second Report (as defined below). By this Motion, the Foreign Representative seeks entry of an Order, in part, recognizing and enforcing the CCAA Sealing Order, and therefore,

Proceeding (as defined below), a copy of which is attached as **Exhibit C**. In further support of this Motion, the Foreign Representative respectfully states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. Recognition of a foreign proceeding and other matters under chapter 15 of the Bankruptcy Code are core matters under 28 U.S.C. § 157(b)(2)(P).

2.      The Foreign Representative consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      Venue in this district is proper under 28 U.S.C. §§ 1410(1) and (3).

4.      The statutory predicates for the relief requested herein are sections 105(a), 363, 365, 1501, 1507, 1514, 1520, and 1521 of title 11 of the United States Code (the "Bankruptcy Code").

## RELIEF REQUESTED

5.      By this Motion, the Foreign Representative seeks entry of orders:

(a)      recognizing and enforcing the CCAA SISP Order, which is attached to the Proposed Recognition Order as **Exhibit 1** and approves, among other relief:

- the sale and investment solicitation procedures (the "Sale Procedures") and implementation thereof; and

- the Debtors' entry into the Stalking Horse Purchase Agreement;

(b)      recognizing and enforcing the CCAA DIP Increase Order, which is attached to the Proposed Recognition Order as **Exhibit 2**;

---

Confidential Appendix A will not be attached to the Supplemental Second Report attached as **Exhibit C**.

3

(c)    recognizing and enforcing the CCAA Sealing Order, which is attached to the Proposed Recognition Order as **Exhibit 3**;

(d)    recognizing and enforcing the CCAA Stay Extension Order, which is attached to the Proposed Recognition Order as **Exhibit 4**;

(e)    recognizing and enforcing the Canadian Sale Order in the United States;

(f)    approving the Sale of the Purchased Assets to the Stalking Horse Purchaser free and clear of all liens, claims, encumbrances and other interests; and

(g)    granting related relief.

## BACKGROUND

**Procedural History**

6.    On July 27, 2023, the Debtors commenced proceedings (the "Canadian Proceeding") under the *Companies' Creditors Arrangement Act* (Canada) (the "CCAA") in the Canadian Court.

7.    On the same date, the Canadian Court issued an initial order (as amended and restated on August 3, 2023, the "Initial Order") that, among other things, granted a stay of proceedings against the Debtors.  The Initial Order authorized Lighthouse Immersive Inc. to act as the foreign representative of the Debtors, and to grant the Foreign Representative authority to apply for recognition of the Canadian Proceeding in the United States.  Additionally, under the Initial Order, B. Riley Farber Inc. (the "Monitor") was appointed as monitor of the Debtors in the Canadian Proceeding.

8.    On July 27, 2023, the Foreign Representative filed petitions in this Court under chapter 15 of the Bankruptcy Code for recognition of the Canadian Proceeding as a foreign main proceeding, thereby commencing the Debtors' chapter 15 cases.

9.    On August 28, 2023, this Court entered a final order (D.I. 20) granting recognition of the Canadian Proceeding as a foreign main proceeding.

10.     On October 5, 2023, the Debtors filed a motion in the Canadian Proceeding (i) seeking authority for the Debtors to conduct a sale and investor solicitation process to solicit offers for the purchase of either a part of or all of the Debtors' business and (ii) extending the period for the stay of proceedings from October 6, 2023 to and including December 8, 2023, seeking an order increasing the amount of DIP financing in the Canadian Proceeding from $3,500,000 to $4,000,0000 and approving the activities, conduct and decisions of the Monitor.

11.     Also on October 5, 2023, the Monitor filed the Second Monitor's Report in support of the Debtors' motion.  On October 12, 2023, the Monitor filed the Supplemental Second Report in response to the Responding Motion Record of the Respondent, LHIMP (ABC), LLC, dated October 11, 2023 and in connection with the Debtors' motion.

12.     Following a hearing held on October 6, 2023, the Canadian Court entered the CCAA Stay Extension Order that, among other things, extended the period for the stay of proceedings from October 6, 2023 to and including December 8, 2023.

13.     Following a hearing held on October 13, 2023, the Canadian Court entered the CCAA SISP Order and the CCAA DIP Increase Order. A copy of the Canadian Court's Endorsement providing reasons for granting the CCAA SISP Order and the CCAA DIP Increase Order is also attached as **Exhibit 1** to the Proposed Recognition Order.

14.     On October 16, 2023, the Canadian Court entered the CCAA Sealing Order, which sealed the confidential appendix to the Supplemental Second Report, which was the Monitor's confidential liquidation analysis.

## THE PROPOSED SALE AND SALE PROCEDURES

**Summary of Key Terms of the Stalking Horse Bid**

15.     The CCAA SISP Order sets out the manner in which (i) the Debtors will solicit binding bids for executable transaction alternatives that are superior to the sale transaction contemplated by the Stalking Horse Purchase Agreement, (ii) any bids will be received, (iii) any Successful Bid will be selected, and (iv) Court approval of any Successful Bid will be sought. Under the Sale Procedures, the terms of the stalking horse transaction (the "Stalking Horse Transaction") will be subject to a full, though condensed, marketing process conducted by the Monitor.

16.     It is important to the Debtors' restructuring that the Sale Procedures be approved and that such approval occur expeditiously to protect against: erosion of the Debtors' value, the continuing operating losses that the Debtors are sustaining, and the potential loss of the Debtors' business critical relationships with their employees and suppliers, among others.  The Sale Procedures, together with the Stalking Horse Transaction, will reduce liquidity constraints and allow the Debtors to market their assets and maximize their value, while also minimizing risks to the Debtors of undertaking the Sale Procedures without the certainty of a transaction. The Foreign Representative submits that this process will reassure the Debtors' employees and suppliers that a going-concern solution will be achieved in the near term.

17.     Pursuant to the Stalking Horse Purchase Agreement, the Stalking Horse seeks to acquire substantially all of the Debtors' fixed assets, inventories, intellectual property, marketing materials and other assets, tangible or intangible.

18.    The key terms of the Stalking Horse Transaction[4] are as follows:

| Term | Description |
|---|---|
| **Sellers:** | Lighthouse Immersive Inc.; Lighthouse Immersive USA Inc. |
| **Stalking Horse Purchaser:** | SCS Finance, Inc. |
| **Purchase Price:** | (i)   An amount required to satisfy the Priority Payables, which amount shall be subject to adjustment as at the Closing Time; *plus* <br><br>(ii)   The Credit Bid Amount, which is estimated to be $4,000,000 as at the Closing Time; *plus* <br><br>(iii)   The aggregate amount of the Assumed Liabilities, the Contract Assumed Liabilities and any cure costs arising from the assignment of a Consent Required Contract under any Assignment Order granted by the Court. |
| **Acquired Assets:** | Substantially all of the assets of the Debtors. |
| **Excluded Assets:** | (i)   Any benefits of any contracts, agreements and understandings of the Debtors which were not assigned to the Stalking Horse Purchaser; <br><br>(ii)   Any legal files of the Debtors in the possession of or maintained by counsel to the Debtors; or <br><br>(iii)   Any other liability that is not either an assumed liability or a contract assumed liability. |
| **Assumed Liabilities:** | (i)   All of the Debtors' obligations and liabilities relating to the assets being purchased arising and accruing in respect of the period after the closing time; <br><br>(ii)   The obligations and liabilities of the Debtors' with respect to the employees transferred to the Stalking Horse Purchaser; <br><br>(iii)   The obligations and liabilities associated with the contracts assigned to the Stalking Horse Purchaser;; and <br><br>(iv)   Any other liability which the Stalking Horse Purchaser; agrees in writing to assume on or before the closing date. |

---

[4]    While Local Rule 6004-1(b)(iv) contains certain provisions to be highlighted in a Sale Motion, since this motion seeks enforcement and recognition of the CCAA SISP Order this Local Rule should not apply. The summary of the Sales Procedures are set forth herein is qualified in full by reference to the CCAA SISP Order, the Sale Procedures, and the Stalking Horse Purchase Agreement.

**Additional Disclosures Under Local Rule 6004-1(b)(iv)**

19.    Consistent with the requirements of Local Rule 6004-1(b)(iv), the Foreign Representative makes the following additional disclosures concerning the Stalking Horse Transaction:

| | |
|---|---|
| Sale to Insider | SCS Finance, Inc. is an insider and affiliate of the Debtors. The Sale Procedures, approved by the Canadian Court, contemplate a robust marketing process under the supervision of the Monitor and the Canadian Court and the Stalking Horse Transaction will be subject to higher and better bids to ensure the fairness of the transaction. |
| Agreements with Management | The Stalking Horse Purchaser or its affiliate shall be offering employment to all of the employees of the Debtors conditional and effective on the Closing and on terms and conditions substantially similar to their respective terms and conditions of employment with the Debtors existing as of the Closing Date. |
| Releases | The Stalking Horse Purchase Agreement provides that the Stalking Horse Purchaser will support the approval of releases of the directors and officers of the Debtors, their advisors, the Monitor and the Monitor's counsel to be sought in the Canadian Sale Order. |
| Private Sale/No Competitive Bidding | As described above, the Sale, pursuant to Sale Procedures approved by the Canadian Court, will be conducted through a robust, marketing process under the supervision of the Monitor and the Canadian Court and will be subject to higher and better bids. |
| Closing and Other Deadlines | The Sale must close as soon as reasonably practicable following the recognition of the Canadian Sale Order and the approval of the Sale Motion by the U.S. Bankruptcy Court, which is targeted to be no later than the week of November 27, 2023. |
| Good Faith Deposit | Not applicable. |
| Interim Arrangements with Proposed Buyers | The Stalking Horse Purchase Agreement does not provide for interim arrangements of the nature contemplated by Local Rule 6004-1(b)(iv)(G). |

| | |
|---|---|
| Use of Proceeds | The net proceeds of the Sale will be distributed pursuant to the Canadian Sale Order, which shall require that such net proceeds be remitted to the Monitor and then distributed in accordance with applicable law. |
| Tax Exemption | Not applicable. |
| Record Retention | The Stalking Horse Purchaser will acquire all information in any form relating to, or used in connection with, the Business, including the Books and Records as a Purchased Asset. Books and Records do not include any legal files of the Debtors in the possession of or maintained by counsel for the Debtors. The Debtors will have reasonable access to the Books and Records following the closing of the Sale to administer the Debtors' CCAA Proceedings and ancillary proceeding under Chapter 15 of the US Bankruptcy Code. The Stalking Horse Purchase Agreement does not address the retention of the Debtors' Books and Records. |
| Sale of Avoidance Actions | Not applicable. Chapter 5 avoidance actions are not available under chapter 15 of the Bankruptcy Code. |
| Sale Free and Clear of Unexpired Leases | Not applicable. Neither of the Debtors leases or subleases property to a third party. |
| Credit Bid | The Stalking Horse Purchase Agreement seeks to permit the Stalking Horse Purchaser to credit bid DIP claims. |
| Relief from Bankruptcy Rule 6004(h) | Given the need to obtain final approval of the Sale in the United States by no later than the week of November 27, 2023, the Foreign Representative seeks to waive the 14-day stay under Bankruptcy Rule 6004(h). |

**The CCAA SISP Order and Sale Procedures**

20.     The Canadian Court entered the CCAA SISP Order on October 13, 2023.

The proposed Sale Procedures are attached to the CCAA SISP Order.

21.     The Sale Procedures are similar to bidding procedures in a chapter 11. The

Sale Procedures establish a clear and transparent process for the solicitation, receipt, and

evaluation of bids on a timeline that the Debtors and the Monitor believe is reasonable and will provide parties with sufficient time and information to submit a competitive bid. The Sale Procedures' timeline allows for a fair and reasonable process that will permit the Debtors to adequately canvass the market and protect against the significant risk of further market decline, reduce liquidity constraints, and allow the Debtors to market their assets and maximize their value.

22.    Because the Sale Procedures are attached to the CCAA SISP Order, the procedures are not restated fully herein. Generally, however, the Sale Procedures set out the parameters by which the Debtors, under the oversight of the Monitor and with the assistance of Province, will market their assets for sale, and contemplate the following timeline:

| Milestone | Deadline |
|---|---|
| Commencement Date | Immediately following the granting of the SISP Order |
| Recognition of SISP in US Bankruptcy Court | Immediately following the granting of the SISP Order, subject to availability of the US Bankruptcy Court |
| Bid Deadline | November 15, 2023 at 5:00 p.m. (EST) |
| Auction Date | November 17, 2023 at 5:00 p.m. (EST) |
| Hearing on the Canadian Sale Approval Motion | No later than November 24, 2023, subject to the availability of the Court |
| Sale Approval Motion in US Bankruptcy Court | Immediately following the granting of the Canadian Sale Approval Motion, subject to availability of the US Bankruptcy Court |
| Closing of the Transaction | As soon as reasonably practicable following the granting of the Sale Approval Motion in the US Bankruptcy Court |

23.    This Court's recognition of the CCAA SISP Order and enforcement of it within the territorial jurisdiction of the United States will provide material assistance to the

Canadian Court and the Debtors because it will allow the Debtors to pursue either the Stalking Horse Transaction or a superior proposal, which is in the best interests of the Debtors and their estates.

24.     Following the bidding procedures contemplated by the Sales Procedures, the Debtors will seek an order approving the Successful Bid and consummation of any transactions approved in the Canadian Proceeding, whereby parties wishing to oppose the entry of the Canadian Sale Order will have the opportunity to object and be heard in the Canadian Proceeding. The Foreign Representative will thereafter seek recognition and enforcement of the Canadian Sale Order within the territorial jurisdiction of the United States in this Court and approval of the asset sale by this Court under section 363 of the Bankruptcy Code.

**Sale Order**

25.     The Foreign Representative requests that this Court set the Sale Hearing for a date that is not later than the week of November 27, 2023, which is the week following the anticipated date of entry of the Canadian Sale Order.  The Debtors intend to dismiss the Canadian Proceeding soon after approval of the Canadian Sale Order by the Canadian Court and therefore, it is important that this Court enter an order approving the Sale shortly after the Sale is approved by the Canadian Court.

26.     At the Sale Hearing, the Foreign Representative intends to seek entry of the Sale Order approving the Sale free and clear of all encumbrances to the fullest extent possible pursuant to Bankruptcy Code section 363(f), including without limitation, successor liability or similar theories (except for those Assumed Liabilities and obligations expressly assumed by the purchaser) and providing that the purchaser will be protected from liability for any claims owed by the Debtors.

## **BASIS FOR RELIEF**

## **The Court Should Recognize and Enforce the CCAA Orders**

27.    Chapter 15 of the Bankruptcy Code is designed to promote cooperation and comity between courts in the United States and foreign courts, protect and maximize the value of a debtor's assets, and facilitate the rehabilitation and reorganization of businesses.  11 U.S.C. § 1501(a).  It empowers courts with "broad, flexible rules to fashion relief appropriate for effectuating [chapter 15's] objectives in accordance with comity." *In re Vitro SAB de CV*, 701 F.3d 1031, 1053 (5th Cir. 2012); *see also Lavie v. Ran*, 406 B.R. 277, 282 (S.D. Tex. 2009) (stating that post-recognition relief in a chapter 15 case involves weighing "'flexible and pragmatic' subjective considerations and comity"); *In re SPhinX, Ltd.*, 351 B.R. 103, 112 (Bankr. S.D.N.Y. 2006) ("[C]hapter 15 maintains—and in some respects enhances—the 'maximum flexibility' . . . that section 304 provided bankruptcy courts in handling ancillary cases considering principles of international comity and respect for the laws and judgments of other nations.") (internal citations omitted).

28.    The CCAA provides a comprehensive framework for reorganization, in which creditors participate in a centralized, collective judicial process, the Debtors operate under the supervision of the Canadian Court, and a stay of actions to recover on creditor claims is implemented.

29.    Sections 1507 and 1521 of the Bankruptcy Code provide the statutory basis to provide relief to a foreign representative following the recognition of a foreign proceeding. Moreover, given that the Court has recognized the Debtors' Canadian Proceedings as foreign main proceedings, under section 1520(a)(2) of the Bankruptcy Code, the provisions of section 363 of

12

the Bankruptcy Code applies to these cases.  Granting the relief requested is consistent with, and

permissible under, sections 1520, incorporating section 363, 1507 and 1521 of the Bankruptcy

Code.  The Court should exercise its discretion and power and recognize and enforce the CCAA

SISP Order.

I.      **The Relief Requested Herein is Appropriate and Warranted Pursuant to Section 1521 of the Bankruptcy Code.**

       30.      Section 1521(a)(7) provides, in relevant part, that:

> Upon recognition of a foreign proceeding, whether main or
> nonmain, where necessary to effectuate the purpose of this
> chapter and to protect the assets of the debtor or the interests
> of the creditors, the court may, at the request of the foreign
> representative, grant any appropriate relief, including—
>
>                       * * *
>
> (7) granting any additional relief that may be available to a
> trustee, except for relief available under sections 522, 544,
> 545, 547, 548, 550, and 724(a).

11 U.S.C. § 1521(a)(7).

       31.      Thus, a foreign representative may seek any relief available to a trustee,

with exceptions not relevant here.  Likewise, section 105(a) of the Bankruptcy Code applies in

chapter 15 cases and permits the court to "issue any order, process, or judgment that is necessary

or appropriate to carry out the provisions of this title."  *See id.* § 103(a) (providing that chapter 1

of the Bankruptcy Code, which includes section 105(a), applies in a case under chapter 15);

§ 105(a).  Trustees, including debtors in possession acting as their own trustee, frequently seek

relief like that in the CCAA Orders. Relief under section 1521(a) of the Bankruptcy Code is

conditioned on determination that the interests of "the creditors and the other interested entities,

including the debtor, are sufficiently protected."  11 U.S.C. § 1522(a).

       32.      Recognition and enforcement of the CCAA SISP Order, which grants relief

to the Debtors that would otherwise be available to them under chapter 11, is appropriate and

within the Court's authority pursuant to section 1521 of the Bankruptcy Code.  To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and, therefore, are appropriate in the context of bankruptcy transactions. The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate. *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("[C]ourt-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

33.    The use of a stalking horse in a public auction process for sales is a customary practice in chapter 11 cases, as the use of a stalking horse bid is, in many circumstances, the best way to maximize value in an auction process by "establish[ing] a framework for competitive bidding and facilitat[ing] a realization of that value." *Off. Comm. of Unsecured Creditors v. Interforum Holding LLC (In re Interforum Holding LLC)*, No. 11-CV-219, 2011 WL 2671254, at *1 n.1 (E.D. Wis. July 7, 2011).  As a result, stalking horse bidders often require break-up fees and, in many cases, other forms of bidding protections as an inducement for "setting the floor at auction, exposing [their] bid[s] to competing bidders, and providing other bidders with access to the due diligence necessary to enter into an asset purchase agreement." *Id*. (citation omitted). Thus, the use of bidding protections, such as the Break-Up Fee, has become an established practice in chapter 11 cases. *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999) ("In other words, the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate.").

14

34.     Parties in interest had an opportunity to object and be heard in the Canadian Proceeding with respect to the relief requested within the CCAA SISP Order, and entry thereof by the Canadian Court, after careful consideration, evidences that the Sales Procedures, the Stalking Horse Purchase Agreement, and the other relief requested by the CCAA SISP Order is proper in light of the facts and circumstances.  As such, the Court should grant recognition and enforcement of the CCAA SISP Order as a form of "appropriate relief" under section 1521(a) of the Bankruptcy Code.

35.     Recognizing and enforcing the CCAA SISP Order as appropriate relief satisfies the requirement under section 1522 of the Bankruptcy Code that the interests of creditors, the debtor, and other interested parties be "sufficiently protected." 11 U.S.C. § 1522(a). As noted above, although the Bankruptcy Code does not define "sufficient protection," it "requires a balancing of the interests of Debtors, creditors, and other interested parties." *In re Petroforte Brasileiro de Petroleo Ltda.*, 542 B.R. 899, 909 (Bankr. S.D. Fla. 2015); *see also In re Better Place, Inc.*, 2018 Bankr. LEXIS 322 at *19 (LSS) (Bankr. D. Del. Feb. 5, 2018) ("The analysis under [section] 1522 is one of balancing the respective interests based on the relative harms and benefits in light of the circumstances presented.") (citations omitted); H.R. Rep. No. 109-31, pt. 1, at 116 (2005) (providing that such protection is lacking where "it is shown that the foreign proceeding is seriously and unjustifiably injuring United States creditors").

36.     Here, granting the requested relief is appropriate because the interests of all parties in interest are protected throughout the Canadian Proceedings, since creditors and other parties in interest have been given notice of the hearing to consider entry of the CCAA SISP Order and will be given a full and fair opportunity to be heard and present objections to approval of the Canadian Sale Order for the Stalking Horse Transaction or, if applicable, superior proposal.

15

Recognizing and enforcing the CCAA SISP Order will protect the interests of both the Debtors and their stakeholders, as the relief granted in the CCAA SISP Order sets the necessary stage for the Debtors to find the best bid for some or all their assets, consummate a related transaction, and ultimately emerge from their insolvency proceedings. The relief requested herein will "assist in the efficient administration of [the] cross-border insolvency proceeding . . . [while] not harm[ing] the interest of the debtors or their creditors." *In re Grant Forest Prods., Inc.*, 440 B.R. 616, 621 (Bankr. D. Del. 2010).  Granting full force and effect to the CCAA SISP Order within the territorial jurisdiction of the United States will ensure the uniform and efficient administration of the Canadian Proceedings and these chapter 15 cases. Accordingly, recognizing and enforcing the CCAA SISP Order is consistent with the well-established principles underlying the Bankruptcy Code and is appropriate under the circumstances.

37.    Similarly, recognition and enforcement of the related CCAA DIP Increase Order and the CCAA Sealing Order, is appropriate and within the Court's authority pursuant to section 1521 of the Bankruptcy Code. The CCAA DIP Increase Order approves the Monitor's conduct and increases the amount of DIP financing available to the Debtors to enable the Monitor to run a sale process with the goal of maximizing the value of the Debtors' estates and seeking a quick and successful exit from the Debtors' restructuring proceedings.  The CCAA Sealing Order protects confidential commercial information from being released into the public record. Moreover, the CCAA Sealing Order requests the aid and recognition of this Court to give effect to the CCAA Sealing Order.

## II.    The Relief Requested Herein is Appropriate and Warranted Pursuant to Section 1507 of the Bankruptcy Code.

38.    The Foreign Representative respectfully submits that the relief requested herein is also warranted as "additional assistance" under section 1507 of the Bankruptcy Code. 11

16

U.S.C. § 1507; *Vitro SAB de CV*, 701 F.3d at 1057 (explaining that section 1507's "broad grant of assistance is intended to be a catch-all"); *see also* H.R. Rep. No. 109-31, pt. 1, at 109 (2005) (noting that section 1507 authorizes "additional relief" beyond that available under section 1521 of the Bankruptcy Code).

39.     In determining whether to exercise its discretion to grant additional relief under section 1507(a), the Court's analysis should be guided by the principle of comity.  *See* 11 U.S.C. § 1507(b).  Additionally, section 1507(b) of the Bankruptcy Code, in relevant part, directs the court to consider "whether such additional assistance, consistent with the principles of comity, will reasonably assure" the:

(1)     just treatment of all holders of claims against or interests in the debtor's property;

(2)     protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding; [and]

(3)     prevention of preferential or fraudulent dispositions of property of the debtor . . . .

11 U.S.C. § 1507(b).

40.     Recognition and enforcement of the CCAA SISP Order is available under section 1507 of the Bankruptcy Code, as all applicable factors are satisfied. First, reasonable assurance of "just treatment of all holders of claims" is met when "foreign insolvency law provides a comprehensive procedure for the orderly resolution of claims and the equitable distribution of assets among all of the estate's creditors in one proceeding." *In re Oi S.A.*, 587 B.R. 253, 267 (Bankr. S.D.N.Y. 2018).

41.    As discussed above, the relief being sought under the CCAA SISP Order is similar to relief routinely afforded to debtors under chapter 11 of the Bankruptcy Code and routinely granted by bankruptcy courts in chapter 11 cases.  Further, the bidding procedures within the Sales Procedures are consistent with the goal of maximizing the value received by the Debtors for some or all their assets and, therefore, a fair and efficient resolution for all key stakeholders.

42.    Second, requiring reasonable assurance of the "protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding" is satisfied where "creditors are given adequate notice of the timing and procedures for filing claims, and such procedures do not create additional procedures for a foreign creditor seeking to file a claim." *Oi S.A.*, 587 B.R. at 268.  The Debtors' creditors and parties in interest have been treated fairly in the Debtors' obtaining the CCAA SISP Order.  Such parties have been provided proper and sufficient notice of, and had the opportunity to raise any objections to, the substantive relief requested in the CCAA SISP Order. Accordingly, the second factor in the section 1507(b) analysis is satisfied.

43.    Third, section 1507(b) requires that the additional assistance reasonably assure "prevention of preferential or fraudulent dispositions of property of the debtor." 11    U.S.C. § 1507(b)(3). Preferential or fraudulent transfers are not permitted under the CCAA, which provides for the recovery of such transfers.  CCAA § 36.1(1) (incorporating by reference sections 38, 95, and 101 of Canada's Bankruptcy and Insolvency Act, which allows for preferential or undervalued transactions made by a debtor to be set aside).  Moreover, the purpose of the Sale Procedures is to ensure that the assets being sold are being disposed of in a value maximizing transaction.  Accordingly, the third factor in the section 1507(b) analysis is satisfied, given the CCAA's prohibition against preferential and/or fraudulent transfers.

44.    Recognition and enforcement of the CCAA Orders will also provide the Debtors and parties in interest with certainty that the orders will be enforceable not only in Canada, but also with respect to creditors beyond the jurisdiction of the Canadian Court but are within the territorial jurisdiction of the United States.  Therefore, recognition and enforcement of the CCAA Orders will protect and prevent prejudice to creditors by ensuring uniform application of the CCAA Orders in Canada and the United States.

## III.    Recognition and Enforcement of the CCAA Orders is Not Manifestly Contrary to United States Public Policy.

45.    Section 1506 of the Bankruptcy Code provides that "[n]othing in [Chapter 15] prevents the court from refusing to take an action governed by [Chapter 15] if the action would be manifestly contrary to the public policy of the United States."  11 U.S.C. § 1506.  The enforcement and recognition of the CCAA SISP Order in the United States is not manifestly contrary to the public policy of the United States and, therefore, section 1506 of the Bankruptcy Code does not present any bar to the enforcement of such order.  The legislative history indicates that the "public policy" exception is narrow, applying only to the "most fundamental policies of the United States."  H. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. 109 (2005); *see In re Irish Bank Resolution Corp. Ltd.*, 538 B.R. 692, 698 *D. Del. 2015) (refusing to find a public policy exception where recognition did not "impinge severely a U.S. Constitutional or statutory right" (internal quotations omitted));  *In re Rede Energia*, 515 B.R. at 92 ("[T]he public policy exception is clearly drafted in narrow terms and the few reported cases that have analyzed [section] 1506 at length recognize that it is to be applied sparingly.").  The Sales Procedures and the Stalking Horse Purchase Agreement approved under the CCAA SISP Order are similar to bidding procedures and stalking horse agreements, which are frequently utilized in chapter 11 cases.  Similarly, it is typical

19

for Debtors in the United States to seek DIP financing to provide funding for their restructuring proceedings. As such, the requested relief is consistent with the public policy of the United States.

46. Accordingly, the Foreign Representative respectfully requests the Court to enter an order giving full force and effect to the CCAA Orders in the United States. Doing so is consistent with long standing principles of international comity and cooperation and is warranted under sections 1507 and 1521 of the Bankruptcy Code.

**The Court Should Recognize and Enforce the Canadian Sale Order and Approve the Sale Pursuant to Section 363 of the Bankruptcy Code.**

47. Based on the extensive sale process conducted under the supervision of the Monitor and the Canadian Court, the Foreign Representative believes that the Sale of the Purchased Assets in accordance with the terms and conditions of the Stalking Horse Purchase Agreement represents the best realization of value for the Debtors' creditors and other stakeholders under the circumstances. Pursuant to the Stalking Horse Purchase Agreement, entry of the Proposed Sale Order, substantially in the form attached hereto, is a condition precedent to consummation of the Sale. This Court's recognition and enforcement of the Canadian Sale Order, and approval of the Sale under section 363 of the Bankruptcy Code, will permit the Debtors to sell the Purchased Assets without disruption and in a timely and efficient manner, and will prevent further erosion of value as a result of the uncertainty caused by the Debtors' restructuring proceedings. Absent the relief requested herein, the Debtors and their creditors will potentially suffer significant, if not irreparable, harm due to an inability to close the Sale with respect to the U.S. assets.

**I.      Section 363 of the Bankruptcy Code is Applicable upon Recognition Pursuant to Section 1520(a) of the Bankruptcy Code.**

48.     Section 1520(a)(2) of the Bankruptcy Code provides, in relevant part, that "[u]pon recognition of a foreign proceeding that is a foreign main proceeding . . . section[] 363 appl[ies] to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the section[] would apply to property of an estate." 11 U.S.C. § 1520(a)(2).  Moreover, section 1520(a)(3) provides that upon recognition of a foreign main proceeding "unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by section[] 363." 11 U.S.C. § 1520(a)(3); s*ee also In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 Bankr. LEXIS 5367, at *18 (Bankr. D. Del. Nov. 16, 2012) (holding that section 363 of the Bankruptcy Code applies to transfers of assets located within the United States outside of the ordinary course of business in connection with cases commenced under chapter 15 of the Bankruptcy Code); *In re Fairfield Sentry Ltd.*, 768 F.3d 239, 244 (2d Cir. 2014) (same). Section 363(b) provides, in pertinent part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

## II.     Entry into the Stalking Horse Purchase Agreement is Warranted under Section 363(b) of the Bankruptcy Code.

49.     Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate outside the ordinary course of business, courts in this Circuit and elsewhere have found that a debtor's sale or use of assets outside the ordinary course of business should be approved if the debtor can demonstrate a sound business justification for the proposed transaction. *See e.g. In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 (3d

Cir. 1986); *In re Grand Prix Assocs.*, 2009 Bankr. LEXIS 1779 (Bankr. D.N.J. June 26, 2009); *In re Summit Global Logistics, Inc.*, 2008 Bankr. LEXIS 896 (Bankr. D.N.J. Mar. 26, 2008). Once the Foreign Representative, on behalf of the Debtors, articulates a valid business justification, "[t]he business judgment rule is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995) (internal quotations omitted); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions").

50.     The "sound business judgment" test requires a proponent of a sale to establish four elements in order to justify the sale or lease of property outside the ordinary course of business. These factors are (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business, (b) that adequate and reasonable notice has been provided to interested persons, (c) that the trustee or debtor in possession has obtained a fair and reasonable price, and (d) that the purchaser has acted in good faith. *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Exaeris Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008); *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989).[5]

51.     The Foreign Representative submits that ample business justification exists to sell the Purchased Assets to the Purchaser under the terms of the Purchase Agreement. The Sale

---

[5]     Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case. Section 105(a) states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court employs its equitable powers to achieve a result consistent with the Bankruptcy Code, the exercise of its section 105(a) power is proper. *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002).

satisfies all four conditions set forth in *Abbotts Dairies*.  First, sound business purposes justify the Sale.  The Foreign Representative believes that the Sale presents the best opportunity for the Debtors to maximize the value of the Purchased Assets.  Second, the Foreign Representative believes that the Sale will establish a fair and reasonable price for the Purchased Assets and that the purchase price will be the best offer received in view of the need for a prompt closing to avoid additional loss of customers.  Third, fair and reasonable notice has been provided to parties interested in the Sale.  Pursuant to the sale process supervised by the Monitor and the Canadian Court, the Debtors and their advisors will have engaged in extensive negotiations to solicit higher and better offers for the Purchased Assets from interested parties.  Moreover, all known creditors, stakeholders and parties in interest are being served with a copy of this Motion by overnight delivery, email, or other comparable expedited delivery in accordance with the *Order (I) Specifying Form and Manner of Service of Notice of the Recognition Hearing Notice Under Sections 105(a), 1514 and 1515 of the Bankruptcy Code and Bankruptcy Rules 2002 and 9007, and (II) Scheduling Hearing* (D.I. 11).  Fourth, as discussed more fully below, the negotiation process undertaken in connection with the Sale satisfies the good faith requirement.  Put simply, the Sale is the product of good faith negotiations among the parties.

52.    Moreover, courts in this Circuit have granted relief similar to the relief requested in this Motion and approved the sale of assets in ancillary proceedings pursuant to sale processes conducted in foreign proceedings.  *See e.g. In re Elpida Memory, Inc.*, Case No. 12-10947 (CSS) (Bankr. D. Del. Jan. 16, 2013) (approving sale of debtor's U.S. assets under section 363 pursuant to sale process in Japan); *In re Xchange Technology Group LLC,* Case No. 13-12809 (KG) (Bankr. D. Del. November 25, 2013) (recognizing and enforcing sale order entered by Canadian court and separately authorizing and approving sale free and clear of any and all liens,

claims, encumbrances and other interests under section 363)*; Arctic Glacier International Inc.*, Case No. 12-10605 (KG) (Bankr. D. Del. July 17, 2012) (same); *In re EarthRenew IP Holdings LLC*, Case No. 10-13363 (CSS) (Bankr. D. Del. February 18, 2011) (same); *In re Grant Forest Products,* Case No. 10-11132 (PJW) (Bankr. D. Del. April 26, 2010) (same); *In re Destinator Technologies Inc.*, Case No. 08-11003 (CSS) (Bankr. D. Del. July 8, 2008) (same).

53.     This Court's recognition and enforcement of the Canadian Sale Order, when granted, and approval of the Sale under section 363 is not only warranted but is critical to achieving the anticipated results of the Sale, as it will permit the Debtors to sell the Purchased Assets without disruption and provide further certainty to the Sale and to the Stalking Horse Purchaser, thereby maximizing the value that can be achieved under the circumstances.  Absent the relief requested herein, the Debtors will likely suffer substantial, if not irreparable, harm from the inability to sell the Purchased Assets without interference and in a manner that will allow the Debtors to maximize recoveries for all creditors and other stakeholders.

54.     For all of the foregoing reasons, the Foreign Representative respectfully submits that there is more than ample justification for this Court to enter the Proposed Sale Order, thereby recognizing and enforcing the Canadian Sale Order in the United States and authorizing the Sale pursuant to section 363 of the Bankruptcy Code.

**III.    The Court Should Approve the Sale Free and Clear of Liens, Claims, Encumbrances and Other Interests Pursuant to Section 363(f) of the Bankruptcy Code.**

55.     The Foreign Representative also respectfully requests that this Court authorize the Sale free and clear of liens, claims, encumbrances and other interests.  Under section 363(f) of the Bankruptcy Code, a trustee or a debtor in possession may sell all or any part of a debtor's property free and clear of any and all liens, claims, encumbrances and other interests in

such property if (i) such a sale is permitted under applicable non-bankruptcy law, (ii) the party asserting such a lien, claim or interest consents to such sale, (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property, (iv) the interest is the subject of a bona fide dispute, or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.  11 U.S.C. § 363(f); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) of the Bankruptcy Code is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met).  In addition, a court may authorize the sale of a debtor's assets free and clear of any liens, claims, encumbrances and other interests under section 105 of the Bankruptcy Code.  *See Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

56.     The Foreign Representative respectfully submits that a sale of the Purchased Assets other than one free and clear of all liens, claims, encumbrances and other interests would yield substantially less value for the Debtors and their creditors than the Sale will, and that the Sale free and clear of all liens, claims, encumbrances and other interests is in the best interests of the Debtors, their creditors, and other parties in interest.  Moreover, the Stalking Horse Purchaser would not have entered into the purchase agreement and would not consummate the Sale contemplated thereby, thus affecting the Debtors, their creditors, and other parties in interest, if the Sale of the Purchased Assets to the Stalking Horse Purchaser was not free and clear of all liens, claims, encumbrances and other interests.  With respect to any and all creditors that may assert an

interest in the Purchased Assets, the Foreign Representative submits that at least one of the subsections of 363(f) applies to such creditors and, in most cases, more than one of the subsections of 363(f) is satisfied. Furthermore, the substantial majority of the property that exists within the territorial jurisdiction of the United States consists of equipment supplied to non-debtor subsidiaries of the Debtors by Lighthouse Immersive Inc.

57.    Accordingly, the Foreign Representative submits that the Sale of the Purchased Assets free and clear of all liens, claims, encumbrances and other interests satisfies the statutory prerequisites of section 363(f) of the Bankruptcy Code.

IV.    **The Court Should Afford the Purchaser All Protections under Sections 363(m) and (n) of the Bankruptcy Code as a Good Faith Purchaser.**

58.    In addition to the relief requested above, the Foreign Representative requests that the Stalking Horse Purchaser receive the protections set forth in sections 363(m) and (n) of the Bankruptcy Code. Specifically, section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith," courts have stated that "the phrase encompasses one who purchases in good faith and for value." *In re Abbots Dairies of Pa.*, 788 F.2d at 147 (internal quotations omitted). Courts have held that in order to demonstrate a lack of good faith, a party would have to show "fraud or collusion between the purchaser and [seller] or an attempt to take grossly unfair advantage [of other potential purchasers.]" *Id.*

59.     The Stalking Horse Purchase Agreement was negotiated without fraud or collusion, in good faith and from an arm's-length bargaining position through the Monitor, and was not entered into for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, the District of Columbia or Canada.  To the best of the Foreign Representative's knowledge, no party has engaged in any conduct that would cause or permit the Sale to be set aside under section 363(n) of the Bankruptcy Code. Accordingly, the Foreign Representative seeks a finding that the Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and has not violated section 363(n) of the Bankruptcy Code.

**Waiving the Stays Imposed by Bankruptcy Rules 6004(h) and 6006(d) is Necessary and Appropriate Under the Circumstances.**

60.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Similarly, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  The Foreign Representative requests that the Proposed Sale Order, once entered, be effective immediately by providing that, to the extent applicable, the 14-day stay under Bankruptcy Rules 6004(h) and 6006(d) is waived.  Time is of the essence with respect to the Proposed Sale Order.  The Debtors intend to seek dismissal of the Canadian Proceeding immediately following entry of the Canadian Sale Order and the U.S. Sale Order due to the fact that (i) the Debtors are operating under extremely tight liquidity constraints and their financing is only expected to provide funding until shortly after the projected Closing Date and (ii) the extended stay period in the Canadian Proceeding will expire

on December 8, 2023.  In order to sell the Purchased Assets to the Purchaser in an expedient manner and allow the Debtors to terminate their restructuring proceedings, the 14-day stay set forth in Bankruptcy Rules 6004(h) and 6006(d) should be waived.

## NOTICE

61.     The Foreign Representative will serve a copy of this Motion by overnight delivery, email, or other comparable expedited delivery in accordance with the *Order (I) Specifying Form and Manner of Service of Notice of the Recognition Hearing Notice Under Sections 105(a), 1514 and 1515 of the Bankruptcy Code and Bankruptcy Rules 2002 and 9007, and (II) Scheduling Hearing* (D.I. 11).  In light of the nature of the relief requested, the Foreign Representative submits that no further notice is required.

WHEREFORE, the Foreign Representative respectfully requests that the Court:  (a) enter the Proposed Recognition Order, substantially in the form attached hereto as **Exhibit A**; (b) enter the Proposed Sale Order, substantially in the form attached hereto as **Exhibit B** and (b) grant such other and further relief as it deems just and proper under the circumstances.

Dated:  October 19, 2023
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/  Derek C. Abbott*
Derek C. Abbott (No. 3367)
Tamara K. Mann (No. 5643)
1201 N. Market St., 16th Floor
Wilmington, DE 19801
Telephone: (302) 658-9200
Facsimile:  (302) 658-3989
dabbott@morrisnichols.com
tmann@morrisnichols.com

- and -

MILLER THOMSON LLP
Kyla Mahar

28

Gina Rhodes
40 King Street West, Suite 5800
Toronto Ontario
M5H 3S1, Canada
Telephone: (416) 595-8500
Facsimile:  (416) 595-8695
kmahar@millerthomson.com
grhodes@millerthomson.com

*Counsel for the Foreign Representative*