**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | ) | Chapter 15 |
| | ) | |
| Lighthouse Immersive Inc., *et al.*, | ) | Case No. 23-11021 (LSS) |
| | ) | |
| | ) | Jointly Administered |
| Debtors in a Foreign Proceeding. [1] | ) | |
| | ) | **Re D.I. 27** |

**ORDER PURSUANT TO SECTIONS 105(A), 363, 365, 1501, 1514, 1520 AND 1521 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004, 6006 AND 9014, (I) RECOGNIZING AND ENFORCING THE CANADIAN APPROVAL AND VESTING ORDER, (II) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of Lighthouse Immersive Inc., in its capacity as the authorized foreign representative (the "Foreign Representative") to the above-captioned debtors (the "Debtors"), for entry of an order under sections 105(a), 363(b), (f), (m) and (n); 365, 1501, 1514, 1520 and 1521 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) recognizing and enforcing in the United States the approval and vesting order (the "Canadian Sale Order") issued by the Superior Court of Justice (Commercial List) in Ontario, Canada (the "Canadian Court") issued on November 27, 2023 for the sale (the "Sale") of substantially all of the Debtors' assets (as defined and described in the Stalking Horse Purchase Agreement (as defined below), the "Purchased Assets"), to SCS Finance, Inc. (the "Stalking Horse Purchaser") pursuant to the asset purchase agreement (the "Stalking Horse Purchase Agreement")

---

[1]     The Debtors and the last four digits of its U.S. Federal Employer Identification Numbers or other unique identifier are as follows: Lighthouse Immersive Inc. (9411) (Ontario Corporation No.) and Lighthouse Immersive USA Inc. (2401) (FEIN).  The Debtors' mailing address is 640 Briar Hill Avenue, Toronto, Ontario, Canada, M5N 1N2.

(b) approving, under section 363 of the Bankruptcy Code, the Sale of the Debtors' right, title, and interest in and to the Purchased Assets to the Purchaser, free and clear of all liens, claims, encumbrances and other interests; and (c) granting related relief; and upon the (a) *Declaration of Corey Ross in Support of (I) Chapter 15 Petitions for Recognition of Foreign Main Proceeding; (II) Motion of the Foreign Representative for Entry of Provisional and Final Relief in Aid of Foreign Main Proceeding; and (III) Certain Related Relief* (the "Ross Declaration"), (b) the *Second Report of the Monitor* (the "Second Monitor's Report"), (c) the *Supplemental Second Report of the Monitor* (the "Supplemental Second Report"), (d) the Third Monitor's Report (the "Third Monitor's Report"); and the arguments of counsel made at a hearing before this Court (the "Sale Hearing"); and upon the record of the Sale Hearing and these chapter 15 cases, and after due deliberation thereon, and good cause appearing therefor, and in accordance with Bankruptcy Rule 7052, it is hereby

**FOUND AND DETERMINED THAT**:

A.    The Canadian Court has duly entered the Canadian Sale Order approving and authorizing the Debtors' execution of the Stalking Horse Purchase Agreement and consummation of the Sale of the Purchased Assets.

B.    This Court has jurisdiction and authority to hear and determine the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b). Venue of these chapter 15 cases and the Motion in this Court and this District is proper under 28 U.S.C. § 1410.

C.    Based on the affidavits of service filed with, and representations made to, this Court: (i) notice of the Motion, the Sale Hearing, and the Sale was proper, timely, adequate, and sufficient under the circumstances of these chapter 15 cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code and the Bankruptcy

Rules; and (ii) no other or further notice of the Motion, the Sale Hearing, the Sale, or the entry of this Order is necessary or shall be required.

D.      The Foreign Representative provided notice and a reasonable opportunity to object and be heard with respect to the Sale, the Motion, and the relief requested therein to the necessary parties in interest, including the following: (i) all persons or bodies authorized to administer foreign proceedings of the Debtors; (ii) all entities against whom provisional relief was sought under section 1519 of the Bankruptcy Code, including, but not limited to, all known creditors of the Debtors in the United States; (iii) all parties to litigation pending in the United States to which either debtor is a party at the time of the filing of the Petitions; (iv) the Office of the United States Trustee for the District of Delaware; (v) any party who has entered an appearance in the Debtors' proceedings  under the *Companies' Creditors Arrangement Act* (Canada) before the Canadian Court (the "Canadian Proceeding"); (vi) all parties known to hold liens in the Purchased Assets; and (vii) any party that has requested notice in these chapter 15 cases.

E.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

F.      The relief granted herein is necessary and appropriate, is in the interest of the public, promotes international comity, is consistent with the public policy of the United States, is warranted pursuant to sections 105(a), 363(b), (f), (m) and (n), 365, 1501, 1514, 1520 and 1521 of the Bankruptcy Code, and will not cause any hardship to any parties in interest that is not outweighed by the benefits of the relief granted.

G.      Based on information contained in the Motion, and the record made at the Sale Hearing, the Debtors, with the supervision and input of the Monitor, conducted a marketing process to solicit interest in the Purchased Assets.  The Canadian Court authorized the Sale

pursuant to the terms of the Stalking Horse Purchase Agreement and entered the Canadian Sale Order.  The Foreign Representative has recommended the Sale in accordance with the Stalking Horse Purchase Agreement, and it is appropriate that the Purchased Assets located within the United States (the "U.S. Purchased Assets") be sold, transferred, assigned, and vested in the Purchaser on the terms set forth in the Stalking Horse Purchase Agreement.

H.      The unallocated consideration provided by the Stalking Horse Purchaser for the respective Purchased Assets under the Stalking Horse Purchase Agreement constitute the highest or otherwise best offers for the Purchased Assets including the U.S. Purchased Assets.

I.      The unallocated consideration provided by the Stalking Horse Purchaser for the Purchased Assets including the U.S. Purchased Assets under the Stalking Horse Purchase Agreement constitutes fair consideration and reasonably equivalent value for the Purchased Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and the laws of the United States, any state, territory, possession thereof, or the District of Columbia.

J.      No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale.

K.      Time is of the essence in consummating the Sale.  To maximize the value of the Purchased Assets and allow the Debtors to dismiss their restructuring proceedings, it is essential that the Sale occur and be recognized and enforced in the United States promptly. Accordingly, there is cause to waive the stay that would otherwise be applicable under Bankruptcy Rules 6004(h) and 6006(d), and accordingly the transaction contemplated by the Stalking Horse Purchase Agreement can be closed immediately upon entry of this Order.

L.      Based upon information contained in the Motion, and the record made at the Sale Hearing, the negotiations over the terms of the Stalking Horse Purchase Agreement was conducted fairly, in good faith, and without collusion, and thus the Stalking Horse Purchaser has acted in good faith within the meaning of section 363(m) of the Bankruptcy Code, and none of the Debtors, the Foreign Representative or the Stalking Horse Purchaser engaged in any conduct that would cause or permit the Stalking Horse Purchase Agreement or the consummation of the Sale to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

M.      The Stalking Horse Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia.

N.      The Foreign Representative may sell the U.S. Purchased Assets free and clear of all liens, claims, encumbrances and other interests, because, with respect to each creditor asserting any such interest, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.

O.      The Stalking Horse Purchaser would not have entered into the Stalking Horse Purchase Agreement and would not consummate the Sale contemplated thereby, thus affecting the Debtors, their creditors, and other parties in interest, if the Sale of the Purchased Assets to the Stalking Horse Purchaser was not free and clear of all liens, claims, and encumbrances and other interests.

P.      A sale of the U.S. Purchased Assets other than one free and clear of all liens, claims encumbrances and other interests would yield substantially less or no value than the Sale; thus, the Sale free and clear of all liens, claims, encumbrances and other interests, in addition to

all of the relief provided herein, is in the best interests of the Debtors, their creditors, and other parties in interest.

Q.      The interests of the Debtors' creditors in the United States are sufficiently protected.

R.      The relief granted herein is necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the United States, and warranted pursuant to section 1521(b) of the Bankruptcy Code.

S.      Any and all findings of fact and conclusions of law announced by this Court at the Sale Hearing are incorporated herein.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.      The Motion is GRANTED.

2.      The Canadian Sale Order is recognized in full and given full force and effect in the United States, provided, however, that this Order does not specifically recognize the release provisions of the Canadian Sale Order, provided further, however that this Order is without prejudice to any later motion seeking such recognition by the Debtors as they may deem appropriate.

3.      The Sale pursuant to the terms of the Stalking Horse Purchase Agreement and the transfers and assignments of the U.S. Purchased Assets on the terms set forth in the Stalking Horse Purchase Agreement and the Canadian Sale Order are approved and authorized pursuant to sections 105, 363, 365, 1501, 1514, 1520 and 1521 of the Bankruptcy Code.

4.      Pursuant to section 1521(b) of the Bankruptcy Code and the Canadian Sale Order, the distribution of the proceeds of the Sale of the U.S. Purchased Assets is entrusted to the Monitor.

5.      All objections to the entry of this Order that have not been withdrawn, waived, or settled, or otherwise resolved pursuant to the terms hereof, are denied and overruled on the merits, with prejudice.

6.      Pursuant to sections 105, 363, 365, 1501, 1514, 1520 and 1521 of the Bankruptcy Code, and to the extent permitted by the Canadian Sale Order, the Debtors, the Stalking Horse Purchaser and the Foreign Representative are authorized to take any and all actions necessary or appropriate to: (a) consummate the Sale of the U.S. Purchased Assets to the Stalking Horse Purchaser in accordance with the Stalking Horse Purchase Agreement, the Canadian Sale Order and this Order; and (b) perform, consummate, implement and close fully the Stalking Horse Purchase Agreement as to the U.S. Purchased Assets, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Stalking Horse Purchase Agreement and the Sale as to the U.S. Purchased Assets.

7.      The fourteen-day stay provided for in Bankruptcy Rules 6004(h) and 6006(d) shall be, and hereby is, waived in connection with this Order.

**Transfer of the Purchased Assets**

8.      Pursuant to sections 105(a), 363, 365, 1501, 1514, 1520 and 1521 of the Bankruptcy Code, upon closing under the terms of the Stalking Horse Purchase Agreement, the U.S. Purchased Assets shall absolutely vest, without further instrument of transfer or assignment, in the Stalking Horse Purchaser all rights, title, and interest of the Debtors to the U.S. Purchased Assets and there shall be a legal, valid, and effective transfer of the U.S. Purchased Assets to the Stalking Horse Purchaser free and clear of any and all security interests (whether contractual, statutory, or otherwise), hypothecs, mortgages, pledges, options, warrants, trusts or deemed trusts (whether contractual, statutory, or otherwise), encumbrances, obligations, claims, interests, liabilities, demands, guarantees, restrictions, contractual commitments, rights, including without

limitation, rights of first refusal and rights of set-off, liens, executions, levies, penalties, charges, financial or monetary claims, adverse claims, or rights of use, puts or forced sale provisions exercisable as a consequence of or arising from the closing of the Sale, whether arising prior to or subsequent to the commencement of the Canadian Proceeding and these chapter 15 cases, whether or not they have attached or been perfected, registered or filed and whether secured, unsecured, legal, equitable, possessory or otherwise, actual or threatened civil, criminal, administrative, regulatory, arbitral or investigative inquiry, action, complaint, suit, investigation, dispute, petition or proceeding by or before any governmental authority or person at law or in equity whether imposed by agreement, understanding, law, equity or otherwise, and any claim or demand resulting therefrom.

9.      Pursuant to sections 105(a), 363(f), 365, 1501, 1514, 1520 and 1521 of the Bankruptcy Code, upon the Closing of the Sale: (a) the U.S. Purchased Assets shall be sold, transferred, or otherwise conveyed to the Stalking Horse Purchaser free and clear of all liens, claims, encumbrances and other interests, (b) no holder of a lien, claim, encumbrance or other interest against the Debtors shall interfere, and each and every holder of a lien, claim, encumbrance or other interest against the Debtors is enjoined from interfering, with the Stalking Horse Purchaser's rights and title to or use and enjoyment of the U.S. Purchased Assets; and (c) the Stalking Horse Purchase Agreement, the Sale, and any instruments contemplated thereby shall be enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any successor thereof.  All persons or entities holding liens, claims, encumbrances or other interests in, to or against the U.S. Purchased Assets are forever barred and enjoined from asserting such liens, claims, encumbrances or other interests against the Stalking Horse Purchaser or its affiliates and their respective officers, directors, employees, managers, partners, members,

financial advisors, attorneys, agents, and representatives and their respective affiliates, successors and assigns or such U.S. Purchased Assets from and after Closing of the Stalking Horse Purchase Agreement.

10.     Each and every federal, state, and local governmental agency or department is authorized to accept (and not impose any fee, charge, or tax in connection therewith for) any and all documents and instruments necessary and appropriate to consummate the Sale of the U.S. Purchased Assets contemplated by the Stalking Horse Purchase Agreement.

11.     Absent a stay pending appeal, no person shall take any action to prevent or enjoin or otherwise interfere with the U.S. Purchased Assets or consummation of the Sale of the U.S. Purchased Assets contemplated in the Stalking Horse Purchase Agreement.

12.     Effective as of Closing under the Stalking Horse Purchase Agreement, the Canadian Sale Order and this Order shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtors' interests in the U.S. Purchased Assets to the Stalking Horse Purchaser free and clear of all liens, claims, encumbrances and other interests.

**<u>Additional Provisions</u>**

13.     The Stalking Horse Purchaser, as a purchaser in good faith within the meaning of section 363(m) of the Bankruptcy Code, shall be entitled to all of the protections of section 363(m) of the Bankruptcy Code.   The reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity and full force and effect of the Sale.

14.     The terms and provisions of the Stalking Horse Purchase Agreement and this Order shall be binding on and inure to the benefit of the Debtors, the Stalking Horse Purchaser, the Monitor, the Debtors' creditors and all other parties in interest, and any successors of the

Debtors, the Stalking Horse Purchaser, the Monitor, and the Debtors' creditors, including any foreign representative(s) of the Debtors, trustee(s), examiner(s) or receiver(s) appointed in these chapter 15 cases or under any chapter of the Bankruptcy Code or any other law, and all such terms and provisions shall likewise be binding on such foreign representative(s), trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the Debtors, its creditors, or any trustee(s), examiner(s) or receiver(s).

15. Subject to the terms and conditions of the Canadian Sale Order and the Stalking Horse Purchase Agreement, provisions of the Stalking Horse Purchase Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement among the Debtors and the Purchaser in a writing signed by the Debtors and the Stalking Horse Purchaser without further action or order of this Court, so long as any such waiver, modification, amendment or supplement shall not adversely affect the rights of third parties with respect to the U.S. Purchased Assets.

16. The failure to include any particular provision of the Canadian Sale Order, the Stalking Horse Purchase Agreement, or any related agreements in this Order shall not diminish or impair the effectiveness of that provision, it being the intent of this Court that, except as otherwise expressly set forth herein, the Canadian Sale Order, the Stalking Horse Purchase Agreement, and any related agreements, with such amendments thereto as may be made by the parties in accordance with the Canadian Sale Order, this Order and the Stalking Horse Purchase Agreement be approved and authorized in their entirety.

17. Notwithstanding any provision in the Bankruptcy Rules to the contrary: (a) the terms of the this Order shall be immediately effective and enforceable upon its entry; (b) the Debtors, the Stalking Horse Purchaser, the Monitor and the Foreign Representative are not subject

to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Debtors, the Stalking Horse Purchaser, the Monitor and the Foreign Representative may, in their discretion and without further delay, take any action and perform any act authorized under the Canadian Sale Order or this Order, in each case with respect to the U.S. Purchased Assets.

18.     Nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or the Foreign Representative from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not a Purchased Asset.

19.     Other than as explicitly set forth herein, this Court shall retain jurisdiction with respect to any and all matters, claims, rights, or disputes arising from or related to the implementation or interpretation of this Order, including any later motion seeking recognition of the release provisions of the Canadian Sale Order by the Debtors.

**Dated: December 6th, 2023**
**Wilmington, Delaware**

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**