UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | . Chapter 15 |
| | . Case No. 23-11021 (LSS) |
| LIGHTHOUSE IMMERSIVE INC., | . |
| *et al.*, | . |
| | . (Jointly Administered) |
| | . |
| | . Courtroom No. 6 |
| | . 824 North King Street |
| | . Wilmington, Delaware 19801 |
| Debtors in a Foreign | . |
| Proceeding. | . Friday, October 27, 2023 |
| . . . . . . . . . . . . . . . | 10:00 a.m. |

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
CHIEF UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors: Derek Abbott, Esquire
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
16th Floor
Wilmington, Delaware 19801

Kyla Mahar, Esquire
MILLER THOMSON LLP
40 King Street West
Suite 5800
Toronto, ON M5H 3S1, Canada

Audio Operator: Jermaine Cooper, ECRO

Transcription Company: Reliable
The Nemours Building
1007 N. Orange Street, Suite 110
Wilmington, Delaware 19801
Telephone: (302)654-8080
Email: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

INDEX

| MOTIONS: | PAGE |
| --- | --- |
| Agenda Item 1: Motion of the Foreign Representative for Entry of an Order (A)(I) Recognizing and Enforcing the CCAA SISP Order, (II) Recognizing and Enforcing the CCAA Dip Increase Order, (III) Recognizing and Enforcing the CCAA Sealing Order, and (IV) Recognizing and Enforcing the CCAA Stay Extension Order, and (B)(I) Recognizing and Enforcing the Canadian Approval and Vesting Order, (II) Approving the Sale of Substantially all of the Debtors' Assets Free and Clear of Liens, Claims and Encumbrances, and (III) Granting Related Relief (D.I. 27, filed 10/19/23) | 3 |
| Court's Ruling: | 16 |

(Proceedings commenced at 10:07 a.m.)

THE COURTROOM DEPUTY: All rise.

THE COURT: Please be seated. Good morning.

MR. ABBOTT: Good morning, Your Honor. Derek Abbott of Morris Nichols here for the Chapter 15 debtors.

Your Honor, there is only one matter on the agenda today, albeit a sort of multilateral motion that appears at Docket Item 27, and that is the motion for recognition of four different orders of the Canadian CCAA Court as well as scheduling a hearing to approve ultimately a sale of certain assets that are located in the territorial jurisdiction of the United States.

Quick background, Your Honor, this Chapter 15 was filed on July 27th in support of CCAA proceedings that were filed in Toronto on July 23rd. On August 28th this Court recognized the CCAA proceeding as the foreign main proceeding. In early October, Your Honor, the CCAA applicants sought entry of an order really akin to a bid procedures order that we would use. They call it an SISP, but it contemplates the monitor running a sale for the debtors' assets in a relatively accelerated timeframe. That matter was heard by the Canadian Court on October 13th and approved. That is the first item up for recognition today. That is, effectively, sale procedures order, the SISP. That order in Canada contemplates a sale hearing up there on 27

November, and we have coordinated with Chambers and understand we have got time on this Court's calendar on December 4th at 10:30 a.m. for the ultimate approval of the sale of those assets that are within the territorial jurisdiction of the United States.

THE COURT: What assets are those? Do you know what types of assets those are?

MR. ABBOTT: Your Honor, I think it is principally merchandise related to the various immersive shows that were run, some perhaps Disney themed, some not, but, Your Honor, my Canadian co-counsel, Ms. Mahar, is on the line. She might be able to amplify that for the Court.

THE COURT: That would be helpful. I couldn’t figure that out from looking at the papers what assets are actually within the territorial jurisdiction of the United States.

MS. MAHAR: Yes. Good morning, Your Honor. Kyla Mahar, Canadian counsel for the applicants.

There are -- Mr. Abbott is right, its merchandise that was located at various venues that have been shut down and is now in storage in the United States. There is equipment, audio visual projectors, servers, that, again, were located in various venues of the subsidiaries that are not filed entities, but were owned by the Canadian entity and they are still located in warehouses in the U.S.

THE COURT: Thank you.

MS. MAHAR: You're welcome.

MR. ABBOTT: Your Honor, the other thing that happened in October in Canada are several things. There was an order approving an increase in the DIP borrowings from $3.5 to $4 million, there was an extension of the stay in Canada through December 8th, and there was a sealing order in connection with certain exhibits to the monitor's report. We did not include those exhibits in what was filed in front of this Court because we wanted to avoid the need for yet an additional sealing motion, but they were sealed under the Canadian order. So, we are simply seeking recognition of that here.

So, those are the four orders about which we are seeking recognition and, obviously, scheduling the hearing on December 4th. Happy to answer whatever questions the Court might have.

THE COURT: So, here is my big picture question as I looked at this motion and the four orders. You're calling it recognition, but I think, from my reading of some cases, my attendance at NCBJ's discussion between Bob Drain and Jay Westbrook about the difference between recognition and enforcement, which is something that I have been thinking about myself in connection with some other cases, that one recognizes the case as the foreign main proceeding, one

recognizes the foreign representative as the entity entitled to ask this Court and other Courts in the U.S. for relief.

I am not sure I recognize orders, but even putting that aside for the moment, and if I were being asked to enforce orders, which is what I think I am really more properly asked, but I can be educated, why do I need to, for example, let's start with sealing motions. On something that is not in my Court why am I recognizing or enforcing an order of the Canadian Court which has really no bearing on anything in front of me because that document isn't in front of me, nobody is asking me to somehow override that order and permit something to be sealed. So, that order actually, sort of, encapsulates what I have been thinking about which is that is wholly in front of the Canadian Court.

Why am I doing anything with that order especially since nobody is asking me to try to impact that order in any way?

MR. ABBOT: Well, let me start with the first question which is maybe a little easier. I think Your Honor is right, there is, what I will call, desinence in the cases. Obviously, the way the code is drafted it contemplates, as the Court said, recognition of various foreign proceedings. Obviously, there is a long history of recognizing CCAA proceedings in Canada.

If you look at the docket of most of the cases in

the U.S. there has developed, what I will call, a trend, perhaps extra statutory to the Court's point, of asking Courts and getting orders recognizing specific orders entered in the foreign proceeding, albeit in the absence of an effort to enforce those orders or a need to enforce those orders necessarily here in the United States.

Under the circumstances of this case my point on the sealing order would be this, Your Honor:

Your Honor may recall the urgency with which we filed this case and had our first day hearing because of pending litigation here in Delaware --

THE COURT: Right.

MR. ABBOTT: -- that was going to start. That litigation got stayed, obviously. The counterparty to that litigation, Your Honor, filed another piece of litigation -- well, I am not sure I would call it litigation, filed an ABC, Your Honor, in the Chancery Court since this case has been filed.

THE COURT: The counterparty to that litigation --

MR. ABBOTT: So, we had a settlement agreement with somebody we call Elhem (phonetic), they had a proceeding here in the Superior Court to enforce that settlement agreement and we are trying to secure a judgment that they could then take and enforce whatever they needed to, that was what was stayed. When that was stayed, not too long after

that, I don’t have the specific date in hand, Your Honor, that party assigned its assets for the benefit of its creditors.

THE COURT: Oh, interesting. Okay. In the Court of Chancery?

MR. ABBOTT: Well, they assigned them and then sought to start a proceeding in the Court of Chancery with a special purpose entity created to be the assignee and affiliate of Rock Creek who you may have seen in various cases but does some ABC work as well.

The assignee in that case appeared at the October 13th hearing in Canada and argued against certain of the relief. I can't say specifically whether they opposed the sealing order up there or not. Ms. Mahar can tell us; however, since then they have retained U.S. counsel here and, in fact, Your Honor may have seen an email from their Delaware counsel whereby we had agreed to extend their objection deadline to the relief we are seeking today.

THE COURT: Oh, I didn’t see it, but Ms. Johnson told me.

MR. ABBOTT: Okay. So, we did. They ultimately did not object, but, Your Honor, they informally requested a lot of information that I think probably on its face would include matters that were sealed in Canada. We have informally produced certain information. It would not

surprise me, quite candidly, if they came back and asked for more including what was sealed in Canada and so that specifically answers why we are asking to have the sealing order approved here. I recognize they are not here and if they came and asked for it in the guise of 2004 or something like that then we could perhaps use that in defense, but that is the candid answer about why we are seeking recognition of that order today.

I will be brutally honest, Your Honor, I have long recognized the first issue you raised --

THE COURT: And maybe I am just catching onto it, but it is something that I have been thinking about and maybe other Courts have not caught onto it yet either in terms of whatever word you used was right, but the extra statutory sort of orders that Courts have been entering with perhaps not thinking through this issue or, again, maybe it's just me.

MR. ABBOTT: No. We thought about it, Your Honor. To be honest, that is, sort of, the typical practice in Chapter 15's and nobody wants to be accused of not doing everything you can in prosecuting your clients interest. So, that is why we have sought this relief. We are not aware of any challenges.

I will say because the DIP increased order results in a charge in Canada over the debtors' assets including

those located within the territorial jurisdiction of the United States, we thought it made sense to have that recognized as well.

The stay extension we thought particularly important to have recognized because as the Court is probably aware, while there is not an automatic stay in CCAA proceedings there is a discretionary process where a stay is sought and typically granted to CCAA applicants that is much broader then the automatic stay in bankruptcy and would, for among other things, stay actions against directors and officers, etc. So, we did think it was important to have that order have territorial significance here in the United States.

Finally, on the sale procedures, Your Honor, we were cognizant of the Court's concerns at the first day about approving any sale ultimately of assets located in the U.S. And while, you know, we kick it around, Your Honor, quite candidly, we didn’t think the recognition of the sale procedures order was necessarily required. What we did want to do is lock-in a sale hearing date and we thought that it would be prudent, frankly, to keep Your Honor, as well informed as we could so you understood the process that was approved in Canada and we weren't coming in cold at the beginning of December.

THE COURT: Right. I think that is fair because

if I had some problem with the process, it would be helpful for you all to know it. So, while, yes, I am not sure that I need to approve that either because the Canadian Court has approved the process, I do appreciate knowing what is going on because, again, if I had an issue with it then I don't want you to be surprised at the sale hearing stage. I don't have an issue with it. So, fair enough.

Well, I did have a question, so I should put it out there so you know about the sale hearing days is I see in the papers that the debtors intended to dismiss the Canadian proceeding soon after approval of the Canadian sale order. So, what happens then because one of the things the Court does look at in terms of recognizing an order, if that is what we call it, or enforcing an order of the foreign court is how are creditors of the U.S. protected. So, how did they raise their claims to the funds if the Canadian proceeding is now dismissed?

MR. ABBOTT: Your Honor, I may need to rely on Ms. Mahar a little bit to talk about the efficacy of the Canadian dismissal. I will tell you my thinking and my understanding. Not unlike a sale order entered in a Chapter 11 where assets are -- I think they call it a vesting order in Canada, but the Court authorizes the buyer to take the assets free and clear of any liens, claims and encumbrances and just like we do here sometimes with a structured dismissal or a non-

structured dismissal the assets have been sold, the buyer has got title, clear title pursuant to the sale order and the dismissal of the case, I think, generally leaves creditors free to take whatever action there may be if they didn't step up and object to the sale either in Canada or in the U.S. depending on their location then I think the sale is a fait accompli and they would have rights as against the shell, just no practical ability to collect.

THE COURT: Well, where is the funds going? I get that is it is where is the consideration going. Is this just a pure credit bid with no consideration?

MR. ABBOTT: Today it is a credit bid. There is a process to try to develop higher and better bids. As I understand it, it's the DIP credit that is being bid for these assets. There is the secured lender -- the DIP lender has additional prepetition secured lending as dry powder, if you will, in a sale, Your Honor. So, its unclear to me whether there will be, at the end of the day, and at the end of the process, just a credit bid or perhaps a cash bid by some other buyer.

If Ms. Mahar would like to try to take a stab at answering that from the Canadian perspective that might be helpful, Your Honor.

THE COURT: Thank you. Ms. Mahar.

MS. MAHAR: Thank you, Your Honor. So, two points

I think to add to what Mr. Abbott said which I agree with. The first being in any dismissal order if there were proceeds, they would be addressed in the Canadian Court. So, a distribution would go in accordance with priorities. So, to the extent it becomes a -- the successful bid is an all-cash bid from a third-party then the Court would, before dismissing the case, deal with all proceeds. Like I said, it would be done in accordance with orders of priority.

So, the Court ordered charges would be repaid first and then secured creditors to unsecured creditors in a waterfall situation. And also -- so that will always happen to the extent there are proceeds that have to be distributed prior to dismissal in the CCAA proceeding. That is, sort of, the last step. Then we would have the case in the U.S. dismissed, recognized, or enforced.

I appreciate the distinction and now I am going to go back and consider it because we do a lot of Chapter 15's and recognitions as no one normally says anything. But the other is there is likely to follow a pure bankruptcy of these two entities. Its not been decided yet, but it will be determined by the time we understand the outcome of the sale process. So, it may be that a bankruptcy follows in which case, in our process that is similar to your Chapter 7.

So, the monitor would become the bankruptcy trustee and to the extent there were any residual claims that

came in or any residual assets that came forward the bankruptcy trustee would be able to deal with it. That doesn’t always happen. Sometimes there is a benefit to doing that for the debtors and we just aren't there in the case yet to see whether that makes sense for the debtors and the creditors.

THE COURT: Has there been a bar date or whatever the Canadian equivalent is of a process yet for claims?

MS. MAHAR: No, Your Honor. Normally in the CCAA that happens once we are aware of whether or not there is sufficient funds to fund down to unsecured creditors. So, the monitor has reviewed secured claims and done an analysis of secured claims and is in the process of finalizing that. As I understand, we are reporting it in the last court hearing in Canada and the Court Officer reviews the secured claims and then unsecured claims, like I said, get called upon. We would do a claims process in the event there is sufficient funds to pay down the waterfall to that level of creditor.

THE COURT: Okay. Thank you, very helpful.

MS. MAHAR: Of course.

THE COURT: Okay. Well, I am going to sign the order as filed for approval of this order as well as the DIP increase because the automatic stay here is in effect by virtue of the initial orders I entered. What you are saying

is that the Canadian order could have a greater effect then the automatic stay.

MR. ABBOTT: Correct, Your Honor.

THE COURT: Let me ask this question: If I sign this order recognizing, giving force and effect to that order and, for example, the party you mentioned comes in and askes -- they could ask me to reconsider this, I guess, they could ask me to do what? I am just trying to think, what would happen? Would they then have to go up to the Canadian Court? Would I say I recognize that order, go up to the Canadian Court and fight it out there?

MR. ABBOTT: Your Honor, I think that would be our position given that the Canadian proceeding is the foreign main proceeding. That said, you know, conceptually I suppose they could move to modify either the automatic stay or the initial stay here in which case that would be our fallback argument as well, Your Honor. This is not the right place for that and we should go to Canada because even if Your Honor modified the stay here there is still a stay in effect pursuant to the Canadian Court.

THE COURT: Right. There is a stay in Canada and that is where I think you would want me, perhaps, to enforce the greater protection that the Canadian proceedings bring then the automatic stay here.

MR. ABBOTT: Candidly, Your Honor, part of the

reason that I think the practice has evolved to getting these orders recognized here is just a practical one. Its easier and a little less expensive if somebody wants to do something to us that would violate either of those days I can show them that order and say you can't do that as opposed to having that order as a defense that I have got to raise, come into Court with process, and time, and expense. I think that is really the practical rationale for why some of this has evolved the way it has, Your Honor.

THE COURT: Well, no one has objected and certainly the one party who is paying attention down here that I know of has not -- chose not to object. So, I am going to enter the order as submitted.

MR. ABBOTT: Thank you, Your Honor. We have uploaded that, I understand, this morning.

THE COURT: Okay. So, I will approve it. Again, nobody has objected. I appreciate very much the discussion we had here. I will think about it in future cases. I am not seeing for these orders, for these four orders, harm to U.S. creditors or anything that violates public policy. So, I will do this.

For the sales order I certainly want to make sure, when we get to that piece of it, that it is honed to assets within the territorial jurisdiction of the United States which has been a focus. It was talked about in the motions.

We have been talking about it. That is why I asked for the assets. What assets are here in the U.S. It strikes me that that is what I can enter an order on.

MR. ABBOTT: Well, we would be doing two things, I suspect, at that sale hearing, Your Honor, assuming the Court was willing to do it. We would be seeking recognition of the Canadian sale order, and separately under 363, in accordance with our ongoing discussions, approval by this Court of the sale of those assets described that are within the territorial jurisdiction of the United States, but we will go back and look at that proposed order and try to make sure that we are cabining what the Court is approving different from recognizing as being limited to the U.S. assets, Your Honor.

THE COURT: Right. I am not sure what recognizing that sale order does, but I will think about that and we may have a similar conversation. For purposes of today and these four orders I see a reason, and the debtors have -- the foreign representative has articulated a reason for this order and, again, no one has objected. So, I will enter it as signed.

MR. ABBOTT: Thank you, Your Honor. That concludes matters for today.

THE COURT: Thank you. We're adjourned.

(Proceedings concluded at 10:33 a.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

/s/ William J. Garling                    April 2, 2024

William J. Garling, CET-543
Certified Court Transcriptionist
For Reliable