```
 1                   UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
 2

 3  IN RE:                         .  Chapter 15
                                   .  Case No. 23-11021(LSS)
 4  LIGHTHOUSE IMMERSIVE, INC.,    .
    et al.,                        .  (Jointly Administered)
 5                                 .
                                   .  824 Market Street
 6     Debtors in a Foreign        .  Wilmington, Delaware 19801
        Proceeding.                .
 7                                 .
                                   .  Thursday, December 4, 2023
 8  . . . . . . . . . . . . . . .  .  10:31 a.m.

 9                         TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
10                     UNITED STATES BANKRUPTCY JUDGE

11  APPEARANCES:

12  For the Debtors:         Derek Abbott, Esquire
                             MORRIS, NICHOLS, ARSHT
13                             & TUNNELL LLP
                             1201 North Market Street
14                           16th Floor
                             Wilmington, Delaware 19801
15
    For Maestro Immersive
16  Art:                     Eric J. Monzo, Esquire
                             MORRIS JAMES LLP
17                           500 Delaware Avenue
                             Suite 1500
18                           Wilmington, Delaware 19801

19
    Electronically
20  Recorded By:             Ian Willoughby, ECRO

21  Transcription Service:   Reliable
                             1007 N. Orange Street
22                           Wilmington, Delaware 19801
                             Telephone: (302) 654-8080
23                           E-Mail: gmatthews@reliable-co.com

24
    Proceedings recorded by electronic sound recording:
25  transcript produced by transcription service.
```

1                              INDEX

2  MATTER GOING FORWARD:                                    PAGE

3  Agenda
   Item 1:   Motion of the Foreign Representative for        3
4            Entry of an Order (A)(I) Recognizing and
             Enforcing the CCAA SISP Order, (II) Recognizing
5            and Enforcing the CCAA Dip Increase Order, (III)
             Recognizing and Enforcing the CCAA Sealing Order,
6            and (IV) Recognizing and Enforcing the CCAA Stay
             Extension Order, and (B)(I) Recognizing and
7            Enforcing the Canadian Approval and Vesting
             Order, (II) Approving the Sale of Substantially
8            all of the Debtors' Assets Free and Clear of
             Liens, Claims and Encumbrances, and (III)
9            Granting Related Relief (D.I. 27, filed 10/19/23)

10
             Court's Ruling                                  14
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (Proceedings commenced 10:31 a.m.)
2             THE COURT:  Please be seated.
3             MR. ABBOTT:  Good morning, Your Honor.
4             THE COURT:  Good morning.
5             MR. ABBOTT:  Derek Abbott, Your Honor, here on
6 behalf of the Lighthouse debtors in these Chapter 15 cases.
7             Your Honor, today is the date that the Court has
8 set for approval of the debtors' effectively sale motion, in
9 conjunction with various Canadian proceedings that authorized
10 the same, Your Honor, and I need to start the hearing with an
11 apology.
12            Your Honor, I've placed on the Court's bench a copy
13 of the Monitor's third report.  We should have filed that
14 along with the vesting order.  I thought it had been
15 attached, but it was not.
16            Your Honor, at paragraphs 19 through 38 of that
17 Monitor's report the Court will see the Monitor's discussion
18 of the sale process and his conclusions regarding the same,
19 which was what ultimately led the Canadian court, I believe,
20 to approve the approval and vesting orders, which we did file
21 a copy of on the docket, Your Honor.  I think that those
22 provisions, of which the Court could take judicial notice,
23 are the evidentiary basis that the Court would need to
24 approve the sale of the assets approved by the approval and
25 vesting order, which are in the United States.  And so maybe

1   I thought we would -- it might make sense for me to just give
2   the Court a chance to quickly read through those paragraphs
3   before I proceed.
4              THE COURT:  Can you remind me what the U.S. assets
5   are that are part of the sale process?
6              MR. ABBOTT:  I can, Your Honor.  As I understand
7   it, the U.S. assets are mostly merchandise that was in
8   various venues or staged to be in various venues, which was
9   sold alongside the shows as they were performed.  So it's,
10  you know, sort of -- I'm assuming T-shirts and --
11             THE COURT:  T-shirts and --
12             MR. ABBOTT:  -- you know, that sort of stuff, and
13  that's the principal.  There might be a modest bit of
14  equipment here and there that was in certain of the venues,
15  but the bulk of the -- the bulk of the merchandise -- or the
16  bulk of those assets is merchandise, Your Honor.
17             THE COURT:  Okay.  And I think I read that there
18  was no other party that came in to make a bid?
19             MR. ABBOTT:  That is correct, Your Honor.  The
20  stalking horse bid, which was essentially a credit bid of the
21  debtor-in-possession financing order of $3.5 million in
22  loaned amount, but when you add in interest and fees and
23  other things, as I understand it, at the time of closing, the
24  outstanding amount will be right at about $4 million.
25             I do understand, Your Honor, that Mr. Allan Nackan,

1  who is the Monitor in Canada, is on the line, and I hope he
2  will correct me if I misstate anything, but, Your Honor --
3  and I guess my second apology and request for forgiveness
4  would be that we should have coordinated with the Court.  He
5  is on the line and I'm not sure there's any questions, there
6  are no objections, but if the Court has questions, he would
7  be available to respond to those.
8              So, Your Honor, stepping back just a second, on
9  July 27th, the debtors filed both these Chapter 15
10 proceedings and the CCAA proceedings in Canada.  On August
11 28th, this Court entered its final order recognizing the CCAA
12 proceedings as foreign meeting proceedings pending in
13 Toronto, Ontario.
14             On October 5th, the debtors sought in Canada the
15 approval of the SISP order, which is effectively a bid
16 procedures, as we would describe it, which was approved, Your
17 Honor, on October 13th in Canada.  On October 27th, this
18 Court entered its order recognizing that order.
19             As set forth in the Monitor's third report, which I
20 have provided the Court, the Monitor and the debtors ran a
21 process contemplated by the SISP order.  And at Docket Item
22 34 in this Court we filed a notice of successful bidder, I
23 believe, that indicated that the stalking horse bidder was
24 the successful bidder, as set forth in the Monitor's third
25 report.

1              We received a couple of responses, Your Honor, to
2    the -- one informal, one formal, to our motion.  The first
3    was by the debtors' credit card provider and they just wanted
4    to reserve their rights in case the buyer sought to assume
5    and assign that contract.  We are not seeking to assume and
6    assign that contract in the United States.  To date, as I
7    understand it, 365 is not applicable in these Chapter 11
8    proceedings, and so we're not attempting to do that.  So I
9    wanted to give the Court and, obviously, that provider
10   comfort, Your Honor, and that was Docket Item 37 by City
11   National Bank.  So there is no concern about the assumption
12   and assignment of that credit card contract.
13             The second, Your Honor, was an informal question by
14   Mr. Monzo's client, whose name escapes me again -- I'm having
15   one of those mornings, Your Honor, but they were concerned
16   that certain of their property may have been in various
17   venues in which the debtors operated.  As we explained to Mr.
18   Monzo and agreed to represent on the Court, the debtors are
19   not selling anything that they do not own and, to the extent
20   that there is not ownership of items covered by the asset
21   purchase agreement, we're not seeking the Court's approval of
22   selling such assets.
23             And I think, with that, that should satisfy Mr.
24   Monzo and his client.
25             THE COURT:  Mr. Monzo.

1           MR. MONZO:  Thank you, Your Honor, just very
2  briefly.  It does, Your Honor, and my client is Maestro
3  Immersive Art, Inc.  There was a relationship that they had
4  with the debtor relating to certain venues in the United
5  States and that there was this -- there were assets that we
6  believe we have an interest in and the debtor has graciously
7  acknowledged that there was an interest.  So those issues, I
8  think, are resolved at this point.
9           THE COURT:  Thank you.
10          MR. MONZO:  Thank you, Your Honor.
11          MR. ABBOTT:  So, Your Honor, unless the Court has
12 questions or -- on the specifics of the process for Mr.
13 Nackan or his team, I would ask that the Court approve the
14 sale order as to the U.S. assets.  In addition, the order
15 that we have proposed, Your Honor, recognizes the Canadian
16 approval and vesting order of the broader sale, including
17 Canadian assets, to the extent that we need to enforce that
18 against any U.S. entities.  I believe there was an order that
19 was submitted with the motion, Your Honor, but I can hand up
20 a copy, if Your Honor would like.
21          THE COURT:  Is it the same?
22          MR. ABBOTT:  Excuse me, Your Honor?
23          THE COURT:  Is it the same order?
24          MR. ABBOTT:  I believe it is, Your Honor.
25

1            THE COURT: Okay, because, yes, there was a form of
2   order submitted, which I've reviewed. I'll take what you
3   have as well, but I do have a couple of questions.
4            MR. ABBOTT: May I approach, Your Honor?
5            THE COURT: You may. Thank you.
6            MR. ABBOTT: The one correction, Your Honor, that
7   we may want to make to the order -- and I think an
8   interlineation is fine -- in the precatory language at the
9   beginning we reference the second Monitor's report that was
10  filed, we haven't referenced the third Monitor's report.
11  That's included, I think, in the record of the sale hearing,
12  but to put a belt and suspenders on it, we may want to just
13  reference that third report, Your Honor.
14           THE COURT: I would like the third Monitor's report
15  filed on the docket, if it hasn't been.
16           MR. ABBOTT: We will do that, Your Honor.
17           THE COURT: Okay. And I read the operative
18  paragraphs.
19           What I -- I had a couple of questions with respect
20  to the order and really based on what you just said, I think,
21  which is that I'm approving the sale of the U.S. assets, and
22  I don't think that is sufficiently clear in every place where
23  the term -- well, the term purchased assets is going to refer
24  to everything, right?
25           MR. ABBOTT: It does --

1        THE COURT:  As I read it.

2        MR. ABBOTT:  -- Your Honor.

3        THE COURT:  And I do note in paragraph 3, in that
4 place -- and I think it may be the only place that I see
5 referenced the purchased assets located within the United
6 States -- and I don't know if we need a defined term to make
7 that clear because I think, under the Code, what I should be
8 approving is the sale of the U.S. assets.

9        MR. ABBOTT:  That's certainly why we're here, Your
10 Honor.  So if we need to make that more clear in the order,
11 we can certainly do that.

12        THE COURT:  I think we do.  I --

13        MR. ABBOTT:  So perhaps in paragraph 6 -- we can
14 define a term "U.S. assets" in paragraph 3 and instead of in
15 6(a) saying purchased assets, just say -- well, that
16 references the Canadian sale order -- maybe say before "and
17 this order" at the end, "and the U.S. assets, in accordance
18 with this order."

19        Maybe that approval is too broad.

20        THE COURT:  Well, it goes back to the lettered
21 paragraphs, the findings.  The findings -- I referenced
22 paragraph 3 because that's the first place that I saw the
23 concept of U.S. assets in the order, but if you look, for
24 example, in lettered paragraphs J, K, and -- well, J and K, I
25 guess, they're again more broadly speaking with respect to

1   all of the purchased assets.  I'm not quite sure how to skin
2   the cat on this because it was a bulk sale -- not in the
3   terms of technical bulk sale, but it was the sale of
4   everything.  And so I take it there was no allocation among
5   the U.S. assets versus the non-U.S. assets?
6            MR. ABBOTT:  I don't believe there was, Your Honor.
7            THE COURT:  Yeah, I didn't get that sense.  So I'm
8   not quite frankly sure how to skin the cat on this.
9            MR. ABBOTT:  Well, what if in each of those J and
10  K, Your Honor, after -- in J, on the second line, after the
11  word "purchased assets," we include a parenthetical that says
12  including the U.S. assets as defined below?
13           THE COURT:  That makes it broader.  I was trying to
14  see -- and it may not be possible -- if I could narrow the
15  order to the U.S. assets and not rule with respect to all of
16  the purchased assets because a Canadian court has already
17  ruled and found what it found and I'm not -- and those assets
18  are not within my jurisdiction.  I'm not sure if there, quite
19  frankly, is a way to do it in those paragraphs or not, but I
20  do think -- I think wherever we're talking about free and
21  clear, like in P, I think that has to be narrowed to the U.S.
22  assets, and where we're talking about my approval, I think it
23  has to be narrowed to the U.S. assets.
24           MR. ABBOTT:  Your Honor, look, that all makes,
25  obviously, good -- paragraph R, it looks like, as well --

1           THE COURT:  Well, what I'd like you to do is go
2 back.
3           MR. ABBOTT:  I'll just -- I'll go through the
4 order, Your Honor, and try to accommodate the Court's
5 concerns as best we can.
6           THE COURT:  As best we can.
7           MR. ABBOTT:  And then perhaps file under
8 certificate a new order or upload a new order, as the Court
9 would prefer.
10          THE COURT:  Yes.  And then the other thing, though,
11 I noticed in the Canadian order that there are releases.
12          MR. ABBOTT:  There are, Your Honor.
13          THE COURT:  And I don't know that I have a basis to
14 grant releases.  I'm comfortable with the -- especially now
15 that I have the third Monitor report, a third report of the
16 Monitor, that I have a factual basis to conclude, to the
17 extent that I need to, which I think I do for the U.S.
18 assets, that we had a fair process, that the highest and best
19 result was obtained for all the assets and the U.S. assets
20 are a subset, and I don't know of a reason to -- that that
21 wouldn't hold, therefore, with respect to the U.S. assets.
22 I'm willing to find good faith, again, based on the third
23 report of the Monitor.  I recognize that this was somewhat of
24 an insider situation, but the sale process and how it was
25 carried and based on the third report of the Monitor, I'm

1  wiling to make that finding, but I don't think I have a basis
2  to provide for releases or to recognize those releases in the
3  Canadian order.  They're there, the Canadian court granted
4  them.  If they become an issue, I suppose I can look at it,
5  but I'm not comfortable with recognizing the order to the
6  extent of the releases.
7           MR. ABBOTT:  Okay, Your Honor.  Let me ask, would
8  the provision of additional evidence to the Court get the
9  Court comfortable?
10          I think recognition of that order -- and we did
11 have, obviously, a colloquy at one of the earlier hearings
12 about the difference between recognizing the proceeding and
13 recognizing the order.  I know the releases were an important
14 part of the sale in Canada and while there hasn't been any
15 controversy, insofar as I'm aware, that would require or give
16 us a reason to come to this Court to seek to approve those
17 releases, I guess that could -- that certainly could arise in
18 the future.  I think what I'm hearing the Court asking is to
19 carve out the releases of the recognition portion of this
20 order, obviously without prejudice to the Court's ability to
21 enforce them under appropriate circumstances.
22          THE COURT:  Yes, yes.  I don't see why I can't --
23 if it becomes an issue in the future, we could take a look at
24 it in the future.  I certainly think the Canadian court has
25 granted the releases and they're enforceable in Canada.  If

1  they need to be enforced down here, I can deal with it down
2  here, but for me to recognize them in a context where I
3  generally would not grant releases in a sale order context,
4  it would be without prejudice, but I don't see a reason to do
5  it now or really a basis to do it now.  If somebody is going
6  to ask me to enforce that provision, I'd like to have a
7  context for it, and that point I think would be the
8  appropriate time to do that.
9              MR. ABBOTT:  I understand, Your Honor.  Let me --
10 I'll go back to the office and work through the various terms
11 of the order, including that.  I'll discuss that final issue
12 with my co-counsel.  There may be a reason I'm unaware of
13 where we need that now; if so, we'll let the Court know and
14 figure out how to do that appropriately, but I think I
15 understand the Court's concern.
16             THE COURT:  Okay.  Well, I think that was -- let me
17 just check my order again.
18      (Pause)
19             THE COURT:  Okay.  Paragraph 15 I also had a
20 question on in the proposed form of order here, which permits
21 for modifications.
22             MR. ABBOTT:  I see that, Your Honor.
23             THE COURT:  If there's going to be something that
24 affects a third party, that's the concern I have there.  If
25 there's, you know, amendments between the purchaser and the

1 debtor that do not affect third parties, I don't have any
2 concern, but that's the only --
3       MR. ABBOTT:  Your Honor, as I think about how to
4 perhaps amend that provision -- and I understand the Court's
5 concern about third parties -- obviously, whatever we're
6 contemplating doing would have been in accordance with the
7 Canadian sale order generally, but perhaps a carveout that
8 limits affecting U.S. parties with respect to the U.S. --
9       THE COURT:  U.S. assets --
10       MR. ABBOTT:  -- assets --
11       THE COURT:  -- yes.
12       MR. ABBOTT:  -- would be appropriate.
13       THE COURT:  Yes.
14       MR. ABBOTT:  Okay.  Well, as we go back and tweak
15 the order, we'll take that into account as well, Your Honor.
16       THE COURT:  Okay.  And if we need to have a follow-
17 on hearing this week to discuss anything, just let us know
18 and we'll accommodate it, but otherwise I'll look for
19 something under certification of counsel.
20       I am prepared, as I said, to approve the sale of
21 the U.S. assets free and clear under Section 363 based on the
22 lack of objection and the resolution of objections that were
23 filed, formally or informally, and the third report of the
24 Monitor, which I would like filed on the docket and which
25 supports the process that we put in place and that I

1 previously approved and that the Canadian debtors have
2 followed with respect to the sale, which I found at the time
3 and continue to think was an acceptable process.
4     MR. ABBOTT:  Thank you, Your Honor.  We will do
5 those things and, if we need time, we'll alert chambers and
6 arrange for that.
7     THE COURT:  Okay.
8     MR. ABBOTT:  Thanks very much, Your Honor.  That's
9 all for the debtors today.
10     THE COURT:  Thank you.  We're adjourned.
11   (Proceedings concluded at 10:55 a.m.)

1                           CERTIFICATION
2           I certify that the foregoing is a correct
3    transcript from the electronic sound recording of the
4    proceedings in the above-entitled matter to the best of my
5    knowledge and ability.
6
7
8
9    /s/ Tracey J. Williams                    April 2, 2024
10   Tracey J. Williams, CET-914
11   Certified Court Transcriptionist
12   For Reliable
13
14
15
16
17
18
19
20
21
22
23
24
25